AFFIRM; Opinion issued November 7, 2012



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00779-CR

**MICHAEL JOSEPH PARKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F10-52232-J

# OPINION

Before Justices Morris, Francis, and Murphy
Opinion By Justice Morris

A jury convicted Michael Joseph Parker of murdering his girlfriend. In two points of error, appellant complains that the trial court erred in submitting an improper charge to the jury and the evidence against him is legally insufficient to support his conviction. We affirm the trial court's judgment.

FACTUAL BACKGROUND

The deceased's body was discovered in a motel room that she had been sharing with appellant. She was found face-down on the motel room floor in a pool of blood. The motel manager testified that, before the body was discovered, appellant behaved strangely when the manager went to appellant's room to collect his weekly rent. Approximately one day later, the manager found the

deceased's body when he noticed appellant's truck was not in the motel parking lot and went to clean the room.

Appellant's friend and drug dealer, Jared Kimmons, testified that appellant had called him about visiting Kimmons at his apartment. Kimmons noticed appellant was ranting, making odd noises, and sounding like he did not have control over himself. Appellant called Kimmons back and told him he could not find Kimmons's apartment. Kimmons attributed appellant's odd behavior to extreme intoxication, which Kimmons had observed in appellant before. Kimmons met with appellant in a restaurant parking lot to drive him to his apartment. Appellant was wearing only boxer shorts, in the middle of winter. He was behaving strangely.

At the apartment, appellant made noises like he was having a panic attack. He told Kimmons he needed a gun because the deceased's husband was out of prison and the deceased was missing. Then he said he needed Kimmons's help getting rid of the deceased's body. After he had slept for about an hour, appellant woke up and started screaming at the top of his lungs that his life was over. He told Kimmons that he had hit the deceased in the head. This concerned Kimmons because appellant previously had hit the deceased in the head.

Appellant's odd behavior escalated so much that Kimmons called 911. Appellant appeared to be very intoxicated. He had ingested vodka and cocaine from Kimmons. Kimmons claimed he told police officers who arrived for the 911 call what appellant had said about the deceased. According to Kimmons, the officers did not take him seriously. The officers who responded to the 911 call, however, testified that Kimmons never said anything about a possible murder. Kimmons testified that although he was currently in jail, he had not received any kind of deal for his testimony.

The deceased's body was discovered the day after appellant was taken to a psychiatric hospital. Police then arrested appellant at the psychiatric hospital. After determining that appellant

-2-

was coherent enough to be interviewed, an officer began questioning appellant. Appellant initially told the officer he had no idea why he was being questioned. When the officer asked appellant the name of his girlfriend, appellant named only his wife, not the deceased. He later indicated that the deceased's husband was out of jail and that the deceased was scared of him. The deceased's husband, however, was still incarcerated at the time of the deceased's murder. Appellant also told the officer he had returned to the motel room and found the deceased's beaten-up body. He never confessed to murdering the deceased. In recorded phone calls appellant made from jail, he indicated that the deceased had punched him in the face while he was driving and that he had just "lost it." He claimed that the deceased had jumped from his truck. He stated that he had lost his mind and that he could not believe he "did something like that."

The deceased's autopsy showed that she had suffered nine or more multiple blunt force injuries to the head. There was some indication that she may have been strangled as well. The deceased had several injuries to her hands, which the medical examiner testified were a "textbook example" of evidence that she had attempted to defend herself. The medical examiner testified that it would have been impossible for the deceased to sustain the injuries she exhibited by falling out of or being pushed from a moving vehicle. He admitted that the deceased could have fallen out of a vehicle moving at a slow rate of speed and then been assaulted later. He explained, however, that simply falling out of a slow-moving vehicle would not have caused the deceased's injuries.

The deceased was not intoxicated at the time of her death. According to the medical examiner, the deceased probably suffered from her injuries for some time before she died, and it was possible she would have survived had she been treated for the injuries in a hospital. The medical examiner estimated that the deceased had died one to three days before the body was found. There was dirt and gravel found embedded in the deceased's right knee cap, which did not correspond with

the fact that when the body was found, the lower part of the body was clothed.

Testing of appellant's truck revealed the deceased's blood on the center and driver's side console. It appeared from the testing that someone had attempted to clean the truck's console. The deceased's blood and appellant's DNA were also found on clothing that had been in appellant's truck. Presumptive blood testing showed a significant amount of blood on the driver-side floorboard and the presence of blood in the front passenger area. In addition, appellant's DNA was found under the deceased's fingernails. No murder weapon was recovered, but the tire iron was missing from appellant's truck.

## DISCUSSION

In his first point of error, appellant complains that the trial court erred by submitting a flawed charge to the jury. He argues the charge should not have included a definition for "intentionally" that included reference to "desire to engage in the conduct" or a definition for "knowingly" that included reference to "with respect to the nature of his conduct or to the circumstances surrounding his conduct." He argues that such definitions were improper because murder is an offense for which the mental state is limited to only the result of the conduct. The State concedes that these definitions in the charge were erroneous but argues that appellant was not harmed by the error because the application paragraph of the jury charge limited the applicable mental states to the result of the offense — the deceased's death.

Because appellant did not argue about any defects in the definitions of intentionally or knowingly at trial, we may reverse for error in the definitions only if appellant was egregiously harmed. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). To conduct an egregious harm analysis, we consider the entire jury charge, the state of the evidence including any contested issues and weight of the probative evidence, the argument of counsel, and any other

–4–

relevant information revealed by the record of the trial as a whole. *Id.*

Here, the application paragraph of the jury charge made clear that appellant could be found guilty only if the State proved beyond a reasonable doubt that appellant knowingly or intentionally caused the deceased's death. It is the application paragraph of a jury charge, rather than the abstract portion, that authorizes the jury to convict. *Crenshaw v. State*, No. PD-1252-11, 2012 WL 4372284, at *4 (Tex. Crim. App. Sep. 26, 2012). And we presume the jury understood and followed the court's charge, absent evidence to the contrary. *See id.* Typically, where the application paragraph correctly instructs the jury, any error in an abstract instruction is not egregious. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999).

The evidence in this case showed that the deceased's death was caused by blunt force injuries to her head. The defensive theories in the case were that the deceased had fallen out of appellant's truck or that appellant had found the deceased without causing her death or that she had hit him and he had "lost it" but had not intentionally or knowingly caused the death. None of these theories allowed for a conviction whereby appellant intentionally or knowingly engaged in the conduct of harming the deceased but did not knowingly or intentionally cause the death or where appellant was aware of the circumstances surrounding his conduct but did not intentionally or knowingly cause the death. Jury argument by both sides in the case emphasized that the jury could convict appellant only if it found that he intentionally or knowingly caused the deceased's death. The record in this case fails to show how appellant was harmed in any way by the trial court's failure to limit the definitions of intentionally or knowingly to the result of the offense.

After reviewing the facts of appellant's case under the egregious harm standard, we cannot conclude appellant was harmed. We overrule his first point of error.

In his second point of error, appellant complains the evidence against him is legally

insufficient to support his murder conviction. He specifically argues the conviction was based "purely on speculation and circumstantial evidence." In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

Viewed in the light most favorable to the verdict, the evidence in appellant's case shows the deceased's body was found in appellant's motel room after appellant had been hospitalized for some sort of mental health breakdown. Before his hospitalization, appellant had stated — among other things — that he needed to dispose of the deceased's body and that he had hit the deceased in the head. The deceased's blood was found in appellant's truck and on clothing inside the truck. Appellant's DNA was found under the deceased's fingernails, and there were defensive wounds on the deceased's hands. Appellant lied to police about the deceased's incarcerated husband being out of jail. And he admitted that the deceased had hit him and he had "lost it" and could not believe he "did something like this."

Circumstantial evidence can be as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Here, the circumstantial evidence, combined with appellant's own admissions, is legally sufficient to support his conviction for murder. We overrule appellant's second point of error.

We affirm the trial court's judgment.


_____
JOSEPH B. MORRIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
110779F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## **JUDGMENT**

MICHAEL JOSEPH PARKER, Appellant

No. 05-11-00779-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 3 of Dallas County, Texas. (Tr.Ct.No. F10-52232-J).
Opinion delivered by Justice Morris, Justices Francis and Murphy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered November 7, 2012.


_____
JOSEPH B. MORRIS
JUSTICE