**AFFIRMED; Opinion Filed December 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01229-CR

### VICKY RENEE MILLER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-81422-2012**

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Evans
Opinion by Justice Evans

Appellant Vicky Miller appeals from the judgment adjudicating her guilty of attempted murder. Appellant asserts three points of error: (1) the evidence was insufficient to support the conviction for attempted murder; (2) the trial court erred by including a definition of murder in the charge which included a "knowing" mental state; and (3) the trial court erred in overruling appellant's objection during the State's closing argument after the State commented on appellant's failure to testify. Finding no merit in appellant's arguments, we affirm the trial court's judgment.

### I. BACKGROUND

Paul Key met appellant at a strip club and proposed within hours of first meeting her. He agreed to support her financially if she would quit her job and marry him. Appellant accepted and the two began a relationship. Appellant lived in an apartment with her two sons, Francisco

Hurtado and Ronnie, as well as a friend of Francisco's, Dunkan Boyce. Appellant and Key lived in separate residences but Key kept some personal items at appellant's home. After several years, Key found himself unsatisfied with appellant's lack of commitment and the financial straits he found himself in from supporting appellant. In November 2011, Key decided he needed to end the relationship with appellant. When appellant showed up at Key's condominium on November 21, 2011, Key agreed to ride back to appellant's apartment to retrieve his belongings. Boyce was in appellant's car and rode back to the apartment with them.

Key testified that when he came back downstairs after gathering his belongings, he saw appellant and Hurtado. Key testified that appellant asked him to have a seat on the couch and that he suddenly felt an electrical cord being tightened around his neck. Key testified that he was able to pull the cord onto his chin so he could breathe. Boyce testified at trial that he strangled Key with an electrical cord and that appellant took over when he lost his grip. Key then testified that although he did not see who strangled him, he did see Hurtado attempt to put a pillow over his face as he struggled. Key further testified that as he tried to stand up with the cord being twisted around his throat, Hurtado hit him in his right eye and twice in the back of the head with a frying pan. Key then started screaming and managed to flee the apartment with a bleeding head wound. Once outside, he stopped a woman driving by and asked her to call 911. Key testified that appellant told the driver that Key was "off his meds" and appellant tried to get Key back inside. Key continued to yell "they're trying to kill me" and went to a nearby Dollar General to ask someone to call 911. Key was then transported by ambulance to the hospital for treatment.

After Key left the apartment, Boyce also called 911. Boyce alleged in the call that Key had assaulted appellant and Key had been injured as a result of Hurtado defending his mother. Boyce testified at trial that appellant asked Hurtado to beat her up so that it would look like Key

attacked her. Although Key was initially arrested for assaulting appellant, the charges were later dropped. Appellant, Boyce, and Hurtado were arrested for the attempted murder of Key. Appellant entered a plea of not guilty and a jury trial commenced on August 5, 2013. The jury found appellant guilty of attempted murder and assessed a punishment of twenty years' confinement. Appellant then filed a notice of appeal.

## II. ANALYSIS

### A. The Evidence Was Sufficient to Support Appellant's Conviction

Appellant contends the evidence is insufficient to support a finding of guilt for the offense of attempted murder. When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

A person commits the offense of murder if such person "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1)-(2) (West 2011). An attempt to commit an offense occurs if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* at § 15.01(a) (West 2011).

Appellant argues that the State failed to present sufficient evidence at trial that appellant ever intended to cause Key's death. Boyce testified that in November 2011 appellant said she wanted to kill Key and asked if Boyce would help her. Boyce also testified that appellant was trying to get a gun but was unable to do so. In addition, he testified that on November 21, 2011, appellant called Hurtado on the way to pick up Key and told Hurtado to get his brother out of the house and to get an extension cord. Boyce testified that after they returned to appellant's apartment, Boyce didn't want to help kill Key and that appellant was trying to convince him to "just go do it." Boyce testified that he strangled Key with an electrical cord and that appellant took over when Boyce lost his grip. Boyce also testified that appellant had the frying pan in her hand. Key testified that appellant was in the room before and after the attack. Further, in his 911 call Key said it was appellant who tried to kill him.

In addition, Walter Stradler, a friend of Hurtado, testified that Hurtado told him that "they" had tried to kill Key and that it didn't work and Hurtado had beat up appellant to make it look like Key had attacked appellant. Stradler identified the "they" as appellant, Hurtado and Boyce. Tim Huddleston, an acquaintance of appellant and friend of Hurtado, testified that appellant asked him to get her a bigger gun than the palm-sized .25 caliber gun she already owned. He also testified that appellant had told him Key was worth a lot of money and that she had mentioned wanting to "knock off Paul" in 2010. Justin Coltharp, another friend of Hurtado, testified that he lived at appellant's home for a while and that appellant told him she wanted to marry Key and kill him so she could take all his money. Coltharp also testified that Hurtado told him about the events of November 21, 2011, including that Hurtado, Boyce, and appellant had tried to kill Key. Wesley Shivers, a former boyfriend of appellant, testified that appellant asked him several times for a gun. When considered in the light most favorable to the verdict, the facts

–4–

in this case were sufficient to support a conviction of attempted murder. We overrule appellant's first point of error.

**B.      Trial Court Did Not Err By Including a "Knowing" Mental State in Murder Definition**

Appellant contends that the trial court erred by including a definition of murder in the charge which included a "knowing" mental state since it allowed the jury to convict appellant without a finding of the specific intent to commit murder. At trial, appellant did not object to the jury charge, but on appeal she argues that she was egregiously harmed by error in the charge. We disagree.

When we review claims of jury charge errors, we first decide whether there was error in the charge. *Ferguson v. State*, 335 S.W.3d 676, 684 (Tex. App.—Houston [14th Dist.] 2011, no pet.). If there was error and appellant objected to the error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, however, the appellant failed to object at trial—as in this case—then the appellant will obtain a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Id.* Egregious harm is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defense theory. *Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information [revealed] by the record of the trial as a whole." *Trejo v. State,* 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

In this case, the jury charge clearly charges appellant with the offense of attempted murder. The abstract portion of the charge then references the Texas Penal Code definition of murder: "[o]ur law provides that a person commits the offense of Murder if the person intentionally or *knowingly* causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."[1] (emphasis added). The language objected to by appellant is the word "knowingly" in the murder definition. However, the jury charge then immediately states that an "attempt" to commit an offense occurs if, "with *specific intent* to commit an offense, a person does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended." (emphasis added). In addition, the application section of the jury charge clearly applies an intentional mental state to the alleged offense:

> NOW, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of November, 2011, in Collin County, Texas, the defendant, VICKY RENEE MILLER, intentionally, with the *specific intent* to commit the offense of murder of Paul Key, do an act, to-wit: by placing an electrical cord around Paul Key's neck or by placing a pillow over Paul Key's face or by striking Paul Key on the head with a pan, which amounted to more than mere preparation that tended [*sic*] but failed to effect the commission of the offense intended, or if you find from the evidence beyond a reasonable doubt that on or about the 21st day of November, 2011, in Collin County, Texas, the defendant, VICKY RENEE MILLER, acting with intent to promote or assist the commission of the offense, if any, she solicited, encouraged, directed, aided or attempted to aid Dunkan Boyce or Francisco Hurtado to *intentionally, with specific intent* to commit the offense of murder of Paul Key, do an act, to-wit: by placing an electrical cord around Paul Key's neck or by placing a pillow over Paul Key's face or by striking Paul Key on the head with a pan, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the defendant guilty of the offense of Attempted Murder as charged in the indictment.

(emphasis added). It is the application paragraph which applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *See*

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(1)-(2) (West 2011) (A person commits the offense of murder if such person "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.").

–6–

*Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). "'It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction.'" *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). The application paragraph "explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Id*. Accordingly, we should look to the application paragraph to determine whether the jury was correctly instructed in order to resolve a harm analysis. *Id.* "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State,* 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). With these principles in mind, we will proceed to conduct a harm analysis using the *Almanza* factors.[2] *See Doughtery v. State*, PD-1411-05, 2006 WL 475802, at *1 (Tex. Crim. App. March 1, 2006) (per curiam) (not designated for publication) (reversing appellate court that did not conduct analysis using all *Almanza* factors).

The first *Almanza* factor requires consideration of the entire jury charge. *See Almanza*, 686 S.W.2d at 171. Here, the jury charge clearly provides that any conviction of appellant required a finding of a specific intent to commit the offense of attempted murder. Accordingly, the charge as a whole does not weigh in favor of egregious harm. *See Medina,* 7 S.W.3d at 640.

The second *Almanza* factor involves the state of the evidence, including the contested issues and weight of the probative evidence. *See Almanza*, 686 S.W.2d at 171. As analyzed above in appellant's first issue, we have already determined that the facts were sufficient for the jury to have convicted appellant of attempted murder. As such, the state of the evidence does not favor a finding of egregious harm.

The third *Almanza* factor involves the argument of counsel. *See Almanza*, 686 S.W.2d at 171. In the State's closing argument, we are unable to find any reference to the mental state of

---

[2] Although appellant mentions the *Almanza* factors, there is no application of the factors to a harm analysis.

"knowingly." Instead, the State consistently discussed the "intent" of appellant. In fact, the State specifically notes that the jury charge defines attempt as "having the specific intent to commit an offense." The argument of counsel does not favor a finding of egregious harm.

The final *Almanza* factor addresses any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171. We are not aware of "any other relevant information" that we should consider.

Thus, in light of the *Almanza* factors, we are unable to conclude that appellant suffered egregious harm from the murder definition in the abstract section of the jury charge which included a "knowingly" mental state. Accordingly, we overrule appellant's second issue.

## C. Trial Court Did Not Err in Overruling Appellant's Objection During the State's Closing Argument

Appellant contends that constitutional rights were violated when the trial court allowed the prosecutor to comment on appellant's failure to testify during the State's closing argument. Specifically, appellant objects to the following italicized language in the State's closing argument:

> I have a job to bring you evidence and bring you the truth about what happened and to make sure I'm prosecuting not only the right person, but the person who is guilty of this offense. That's the truth. That's about the only truthful thing we heard today from this side of the table. I say that because they want to call what we are bringing here today -- the evidence, the facts, the testimony, the numerous witnesses that can corroborate what happened -- they want to call that my story. My story. *Well, heck, Vicky, what story is it?* We've told four. She's told four from the opening -- her Defense has, at least -- from the opening and through the closing.

Appellant's counsel objected "to the comments directed towards the Defendant and remarks on her decision not to testify." After the trial court overruled the objection, the prosecutor stated: "What happened on November 21st, 2011? We know the truth. We know the truth because the Defense is not refuting what happened to Paul Key." Appellant argues that this statement points

–8–

to a lack of evidence that only appellant could supply. As such, appellant argues that the error should result in a reversal and remand. We disagree.

To determine if a prosecutor's comment violated the state and federal constitutional protections from, and the code of criminal procedure[3] prohibition of, an impermissible reference to an accused's failure to testify, we must consider whether the language used was manifestly intended or was of such character that the jury would naturally consider it to be a comment on the failure of the accused to testify. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). We "must view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Id.* In addition, it is only error when the language points to a lack of evidence that only the defendant herself can supply. *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995).

In this instance, the State argues that the prosecutor's statement did not necessarily refer to the appellant's failure to testify but, rather, served to raise the issue of which defense theory the jury was supposed to believe. The State argues that the statement—"Well, heck, Vicky, what story is it?"—was a critique of the multitude of defensive theories presented by appellant. Whether the several different theories were the referent or it was a vague comment without a specific target, we cannot conclude that this language was manifestly intended or was of such character that the jury would naturally consider it to be a comment on the failure of the accused to testify. As such, we overrule appellant's third issue.

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005) ("Any defendant in a criminal action shall be permitted to testify in his own behalf, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.")

## III. CONCLUSION

We resolve appellant's issues against her and affirm the trial court's judgment.


/ David Evans/
DAVID EVANS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
131229F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

VICKY RENEE MILLER, Appellant

No. 05-13-01229-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-81422-2012.
Opinion delivered by Justice Evans. Justices Bridges and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of December, 2014.