

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1252-11

### BRADLEY KELTON CRENSHAW, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

HERVEY, J., delivered the opinion of the Court in which PRICE, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., concurred. WOMACK, J., dissented. MEYERS, J., not participating.

### O P I N I O N

Appellant, Bradley Kelton Crenshaw, was convicted of driving while intoxicated. The Fort Worth Court of Appeals reversed his conviction, determining that the trial court erred in submitting a jury charge that included both the subjective and per se definitions of intoxication, even though the information alleged only the subjective definition.

*Crenshaw v. State*, No. 02-08-00304-CR, 2011 Tex. App. LEXIS 5916 (Tex. App.—Fort Worth July 28, 2011) (mem. op., not designated for publication). We granted the State's petition for discretionary review, and we will reverse the judgment of the court of appeals.

## I. BACKGROUND

In two paragraphs, Appellant was charged by information alleging that he operated a motor vehicle in a public place while he was intoxicated "by not having the normal use of his mental or physical faculties by reason of the introduction" of (1) alcohol or (2) "alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into his body." *See* TEX. PENAL CODE §§ 49.01, 49.04.

At trial, Officer Andrew Anderson testified that he stopped Appellant around 2:00 a.m. after witnessing him changing lanes without signaling and weaving onto the shoulder of the road as he exited the highway. The officer smelled alcohol on Appellant's breath, and he noticed that Appellant had heavy, red, bloodshot eyes and soft, slurred speech. Anderson also smelled the odor of marijuana on Appellant. Appellant admitted to the officer that he had a bourbon and Coke at 1:00 a.m., and that he had smoked marijuana a week and a half previously but denied that he had smoked that night. During field sobriety tests, Appellant demonstrated several clues of intoxication. Thus, under the totality of the circumstances, Anderson "had reason to believe he was intoxicated" and arrested Appellant for DWI. Subsequently, Anderson conducted an inventory search of

Appellant's vehicle and found a marijuana leaf in the center console.[1]

Anderson testified that he then took Appellant to the hospital for a blood draw, to which Appellant consented.[2] The blood draw occurred at 4:01 a.m. In anticipation of the State's introduction of his blood-test results and extrapolation testimony, Appellant objected, under Rules 401 and 402, that the evidence would be confusing to the jury and that it was not relevant to whether he had had the normal use of his faculties at the time of the alleged offense. *See* Tex. R. Evid. 401 & 402. The trial court overruled the objection, and Appellant requested and was granted a running objection.

Andrew Macy, a forensic scientist at the Texas Department of Public Safety's crime laboratory in Garland, testified that the blood sample taken from Appellant contained 0.07 grams of alcohol per 100 mL of blood.[3] Angela Springfield, chief toxicologist of the Tarrant County Medical Examiner's Office, explained that the State of Texas designates a 0.08 blood alcohol concentration (BAC) as the legal level of intoxication but that changes resulting from intoxication can be scientifically measured at BAC levels of 0.03 and 0.04. Although Springfield testified that she would need more information to determine Appellant's exact BAC at the time of driving, she opined that it

---

[1]Both Appellant and the passenger were charged with possession of marijuana.

[2]Anderson explained that he chose to execute a blood draw, rather than a breath test, because he had reason to believe that Appellant was also under the influence of marijuana.

[3]The Garland lab was not equipped with the toxicology equipment needed to test Appellant's blood for the presence of marijuana, so Anderson decided not to have that testing done.

was higher than .08. For example, she explained that if a person is 6'1" and 140 pounds, has had "one or two bourbon and Cokes," had his last drink at 1:00 a.m., is stopped by the police at 2:06 a.m., and had a blood draw at 4:01 a.m. that showed a BAC of 0.07, then that person would have had a BAC of at least 0.08 at the time he was driving.

During the charge conference, the State objected to the proposed definition of intoxication, which did not state that a person was intoxicated if he had a BAC of .08 or more. In response, the trial court included the per se definition in the jury charge but did not include it in the application paragraph. Specifically, in the definition section, the trial court instructed the jury that

> (1) "Intoxicated" means:
> A. Not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into the body; or
> B. Having an alcohol concentration of 0.08 or more.

The trial court also instructed the jury, without objection, that

> You are further instructed that if a defendant indulges in the use of Marijuana to such an extent that he thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been, and by reason thereof becomes intoxicated from recent use of alcohol, he would be in the same position as though his intoxication was produced by the use of alcohol alone.

The application paragraph tracked the language of the information and permitted the jury to convict Appellant of DWI if they found beyond a reasonable doubt that he

> did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, and while so intoxicated, by

reason of the introduction of alcohol into his body, either alone or by introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances into the body, and on the said date did then and there drive or operate a motor vehicle in a public place while intoxicated.

In closing arguments, the State contended that the jury could find Appellant guilty of DWI under either theory of intoxication and that the jurors did not have to agree as to which one. The jury found Appellant guilty. The trial court sentenced him to 120 days' confinement and assessed an $850 fine, probated for twenty-four months.

## II. COURT OF APPEALS

On direct appeal, Appellant argued that the trial court erred in submitting a charge that instructed the jury on both the subjective and per se definitions of intoxication when the information alleged only the subjective definition. The Fort Worth Court of Appeals agreed, and holding that the error was harmful, it reversed the trial court's judgment and remanded the case for a new trial. *Crenshaw*, 2011 Tex. App. LEXIS 5916.

The court of appeals determined that, because the information did not allege a per se theory of intoxication, Appellant did not have notice that the State would prove per se intoxication and, thus, had no opportunity to prepare the appropriate defense. *Id.* at *10-13 (citing *Otto v. State*, 273 S.W.3d 165, 170-71 (Tex. Crim. App. 2008); *Reed v. State*, 117 S.W.3d 260, 265 (Tex. Crim. App. 2003)). The court of appeals determined that the State's reliance on *State v. Barbernell*, 257 S.W.3d 248 (Tex. Crim. App. 2008), was misplaced because, in that case, the State alleged neither definition of intoxication so it

was able to prove either. According to the court of appeals, by alleging the subjective definition of intoxication in this case, the State was bound to prove it, and the jury charge impermissibly permitted a conviction on the per se definition. The court also held that the trial court erred to include the per se definition of intoxication, finding that the evidence did not support its inclusion because the retrograde extrapolation evidence was inadequate. *See Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994).

The State appealed to this Court, and we granted discretionary review to address two issues:

> (1) Can submission of a jury charge with an application paragraph that tracks the information's language verbatim erroneously expand on the allegations of the information, constituting charging error?
> (2) In light of *Barbernell*, can abstract submission for both intoxication definitions constitute harmful error under *Almanza* where the application paragraph tracks the information's use of the subjective intoxication definition?

Because we hold that the first issue is dispositive, we need not reach the second issue.

### III. ARGUMENTS OF THE PARTIES

#### *A. State's Arguments*

The State argues that the jury charge in this case was proper. Noting that the application paragraph mirrored the information's allegations, the State contends that this Court has routinely held that jury instructions do not expand the allegations a defendant faces when the application paragraph submitted tracks the indictment's language

verbatim. *Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994). The State emphasizes that the per se definition was present only in the abstract, not applied, portion of the jury charge. *Compare Lewis v. State*, 815 S.W.2d 560, 562 (Tex. Crim. App. 1991), *with Otto*, 273 S.W.3d at 166, 172, *and Reed*, 117 S.W.3d at 261-62.

Additionally, the State avers that the jury charge provided adequate notice because Appellant received notice of the theory on the face of the information. The State argues that the jury's verdict, viewed through the lens of the application paragraph, determined Appellant's guilt based on the subjective theory of intoxication. According to the State, Appellant knew pretrial that the State would be introducing the blood-test evidence, and because the statutory definitions of intoxication overlap and are not mutually exclusive, the State was justified in presenting evidence of the per se theory of intoxication to prove that Appellant was subjectively impaired. *See Barbernell*, 257 S.W.3d at 255; *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005).

## B. Appellant's Arguments

Appellant responds that the submission of an uncharged allegation by way of a definition, even if the charging paragraph is correct, constitutes constitutional error when the State uses that definition to expand the charge beyond that alleged in the charging instrument. Appellant analogizes this to the legal scenario in which the failure to allege an alternative manner and means of committing the offense prevents that manner and means from being submitted to the jury or considered by the court in determining the

sufficiency of the evidence. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). According to Appellant, the State chose to delineate the theory of prosecution in the charging instrument, and it cannot change the theory of prosecution during trial. Appellant claims that, because the State submitted evidence on the BAC, submitted the per se definition of intoxication, and argued that theory in closing arguments, he was convicted on a theory not alleged in the charging instrument and for which he had no notice prior to trial, in violation of due process of law. *See Plunkett v. Estelle*, 709 F.2d 1005 (5th Cir. 1983). Hence, Appellant avers that the variance between the manner and means alleged and the proof and arguments presented at trial deprived him of his constitutional right to notice of the charges against him and his right to effective assistance of counsel in preparing for trial. *See Macias v. State*, 136 S.W.3d 702 (Tex. App.—Texarkana 2004, no pet.).

## IV. ANALYSIS

A criminal defendant is entitled to fair notice of the specific charged offense. U.S. CONST. amend. VI; TEX. CONST. art. I § 10. The jury charge must set forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. The State is bound by the allegations in the charging instrument. *Leal v. State*, 975 S.W.2d 636, 639 (Tex. Crim. App. 1998); *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983).

An indictment or information that pleads the offense of DWI provides adequate notice when it sets out the elements of the offense as provided in Section 49.04 of the

Texas Penal Code. *Barbernell*, 257 S.W.3d at 248. A person commits the offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a). Intoxication is an element of DWI, and the Texas Penal Code sets out two definitions of "intoxicated." The subjective definition of intoxicated is "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances, or any other substance into the body." *Id.* § 49.01(2)(A). The per se definition of intoxicated is "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2)(B). These definitions overlap and are not mutually exclusive. *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010).

"The conduct proscribed by the Penal Code is the act of driving while in a state of intoxication." *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003). The two definitions of intoxication "set forth alternative means by which the State may *prove* intoxication, rather than alternate means of *committing* the offense." *Barbernell*, 257 S.W.3d at 256 (quoting *Bagheri*, 119 S.W.3d at 762). Thus, the definitions of intoxicated are purely evidentiary matters, and they need not be alleged in the information or indictment to provide a defendant with sufficient notice—the State may simply allege that a person was "intoxicated" to satisfy the notice requirement. *Id*.

In this case, the information alleged the subjective theory of intoxication (*i.e.*, that Appellant "was intoxicated by not having the normal use of his mental or physical

faculties"). Although the State was not required to provide either definition of intoxication in the information,[4] it went beyond the minimum notice requirement by providing the definition that it intended to pursue. In fact, Appellant was convicted under that subjective theory of intoxication as alleged in the information, and including the per se definition of intoxication in the abstract portion of the charge did not expand the allegations against Appellant.

It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik*, 953 S.W.2d 234. An abstract charge on a theory of law that is not applied to the facts does not authorize the jury to convict upon that theory. *Hutch*, 922 S.W.2d at 172; *Campbell*, 910 S.W.2d at 477. Generally, reversible error occurs in the giving of an abstract instruction only when the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph. *Plata*, 926 S.W.2d at 302.

To illustrate, in *Lewis*, 815 S.W.2d at 562, a capital murder case, the appellant

_____

[4]*See Barbernell*, 257 S.W.3d at 256.

argued that it was error for the trial judge to abstractly instruct the jury on the theory of transferred intent. He claimed that doing so authorized a conviction without requiring the jury to specifically find an intentional killing, contrary to the express language of Section 19.03(a)(2) of the Texas Penal Code. We disagreed because the definition of transferred intent was a general statement, and the application paragraph did "not purport to authorize a conviction under any circumstances absent a finding that appellant specifically intended to kill the deceased." *Id.*; *see also Mauldin v. State*, 628 S.W.2d 793, 796 (Tex. Crim. App. [Panel Op.] 1982) (holding that the submission of an abstract instruction on the law of parties was not error because the abstract instruction was not applied to the facts of the case and the court's charge specifically required the jury to find the appellant's guilt based on his own behavior).

In contrast, in *Otto v. State*, 273 S.W.3d at 171, we held that the jury charge improperly broadened the charges against the appellant. The DWI indictment alleged only that the appellant was intoxicated by the introduction of alcohol. However, a concurrent-causation instruction was included in the jury charge, and the relevant application paragraph instructed the jury to convict the defendant if it found that her intoxication was caused by her ingestion of alcohol, operating either alone or concurrently with her ingestion of an unknown drug. *Id.* at 166-67 & n.1. Therefore, the jury charge authorized a conviction under a "combination" theory not alleged in the indictment. *Id.* at 170-71.

In this case, the per se definition of intoxication was only in the abstract section of the jury charge, and it was not incorporated into the application paragraph. The application paragraph tracked the language of the information, which alleged the subjective theory of intoxication, and thus restricted the jury's consideration to only those allegations contained in the information. *See Lewis*, 815 S.W.2d at 562. The jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Hutch*, 922 S.W.2d at 172. Therefore, we presume that the jury convicted Appellant of DWI pursuant to the subjective theory of intoxication.

Moreover, the per se definition of intoxication was not an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph. *See Plata*, 926 S.W.2d at 302. Both definitions of "intoxicated" tracked the language of the statutory definitions and are, therefore, correct statements of the law. Additionally, the definitions of intoxicated are not mutually exclusive, and there is considerable overlap between the two. *See Mechler*, 153 S.W.2d at 441. As such, evidence supporting a finding that a defendant was intoxicated under one definition may also be used to prove intoxication under the other. *Id.* (explaining that the defendant's intoxilyzer results "tend to make it more probable that the defendant was intoxicated at the time of driving under both the per se and impairment definitions of intoxication").

Finally, this case does not involve a variance as Appellant alleges. In a variance

situation, "the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar*, 46 S.W.3d at 246. Although the State presented evidence of Appellant's BAC and referred to the per se theory of intoxication in closing arguments, the State did not prove the commission of DWI in a manner that varied from the allegations in the charging instrument. Instead, due to the evidentiary nature of the intoxication definitions and the overlap between the two, the BAC evidence made it more probable that Appellant was subjectively impaired at the time he was driving, thereby supporting the theory alleged in the information and applied to the facts in the charging instrument. *See Mechler*, 153 S.W.2d at 441.

## V. CONCLUSION

Appellant was convicted under the subjective theory of intoxication as alleged in the information. Including the per se definition of intoxication in the abstract portion of the jury charge did not expand the allegations against Appellant. We reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

Hervey, J.

Delivered: September 26, 2012

Publish