

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00166-CR

**THE STATE OF TEXAS,**

**Appellant**

 **v.**

**LARRY DANIEL JEWELL,**

**Appellee**

_____

**From the County Court at Law No. 2**
**Ellis County, Texas**
**Trial Court No. 1010722CR**

_____

## CONCURRING OPINION

_____

Because I am not inclined to explicitly hold that Jewell has an absolute and reasonable expectation of privacy in all of his medical records, other than his blood-test results, I cannot join the lead opinion.

The lead opinion begins by analyzing whether Jewell had a reasonable expectation of privacy in the blood-test results at issue in this case. *Slip op.* at **5-9. Relying heavily on the Court of Criminal Appeals' decision in *State v. Hardy*, the lead opinion holds that Jewell does not have a reasonable expectation of privacy in the

blood-test results and ultimately concludes that he lacked standing to complain about how the State obtained them. *Id.* at *6 (citing *State v. Hardy*, 963 S.W.2d 516 (Tex. Crim. App. 1997)). Nevertheless, the lead opinion notes that *Hardy* "specifically limited its holding to blood-test results." *Id.* at **6-7 (citing *Hardy*, 963 S.W.2d at 524 n.8). And based on this interpretation of *Hardy*, the lead opinion finally concludes that: "Based on HIPAA, which was enacted after *Hardy*, we hold that Jewell has a reasonable expectation of privacy in his medical records (other than his blood-test results) and thus has standing to contest how the State obtained them." *Id.* at *7. It is this statement that I find troubling.[1]

First, in explaining my concerns with the lead opinion, I believe that it is necessary to further explore the *Hardy* decision—the most recent opinion from the Court of Criminal Appeals relevant to this issue. In *Hardy*, the defendant was involved in an automobile accident. 963 S.W.2d at 517. The investigating officer formed the opinion that the defendant was intoxicated. *Id.* However, due to his injuries, the defendant was "life-flighted" to a local hospital for treatment. *Id.* at 517-18. During the course of treatment, a blood-alcohol test was conducted for medical purposes. *Id.* at 518. Later, the investigating officer obtained a grand-jury subpoena for the alcohol or drug information pertaining to the defendant's medical treatment. *Id.* The records

---

[1] I recognize that the lead opinion also relies on HIPAA to support the statement about Jewell's reasonable expectation of privacy in his medical records, other than the blood-test results. However, the lead opinion also notes that HIPAA has numerous exceptions for law enforcement to obtain the medical records of a defendant. In light of these exceptions and other reasons explained below, I do not believe that it is necessary or appropriate to conclusively state that Jewell has a reasonable expectation of privacy in all of his medical records, other than the blood-test results, at this time.

indicated that the defendant's blood-alcohol level was 0.239. *Id.* Subsequently, the defendant was charged with the misdemeanor offense of driving while intoxicated. *Id.*

Before trial, the defendant filed a motion to suppress the blood-test results and other medical records that were obtained pursuant to the grand-jury subpoena. *Id.* The trial court granted the motion to suppress, concluding that the investigating officer's actions violated the Texas Medical Practice Act and the defendant's right to a reasonable expectation of privacy. *Id.* The State appealed, and the Court of Appeals reversed and remanded, holding that the defendant did not have any reasonable expectation of privacy in medical records in criminal cases. *Id.*

The Court of Criminal Appeals analyzed the issue under, among other things, the Fourth Amendment. *Id.* at 523-27. In doing so, the Court noted that: "No consensus exists in court decisions on whether an expectation of privacy exists in medical records, even in the DWI context." *Id.* at 525 (internal citations omitted). Ultimately, the Court held that, "in the case of blood test results obtained by subpoena, where the tests were conducted by medical personnel solely for medical purposes, the person's interest in bodily integrity is not presented." *Id.* at 527. In affirming the Court of Appeals, the Court of Criminal Appeals further noted that:

> We express no opinion concerning whether society recognizes a reasonable expectation of privacy in medical records in general, or whether there are particular situations in which such an expectation might exist. We note only that, given the authorities discussed, whatever interests society may have in safeguarding the privacy of medical records, they are not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident.

*Id.*

In footnote 8, the Court of Criminal Appeals explained why it chose not to express any opinion whether society recognizes a reasonable expectation of privacy in medical records in general. *See id.* at 524 n.8. Specifically, the Court stated that:

> The trial court and Court of Appeals indicate that there are "other" medical records that the trial court suppressed. But, appellant does [not] indicate the nature of those "other" medical records. Without knowing the contents of those records, we at this time decline to consider whether society would recognize an expectation of privacy in them. We limit the scope of our Fourth Amendment holding to the blood test results.

*Id.*

The statements made in *Hardy* clearly suggest that the Court of Criminal Appeals was unwilling to make a blanket statement that defendants have a reasonable expectation of privacy in all of their medical records in criminal cases. Implicit in that belief is the notion that some medical records, other than blood-test results, may be discoverable if they are relevant to the charged offense. *See* TEX. PENAL CODE ANN. § 49.01 (West 2011), § 49.04 (West Supp. 2012); *see also* TEX. R. EVID. 401-02.

Here, Jewell was charged with driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04. Section 49.04 of the Texas Penal Code, entitled "Driving While Intoxicated," provides that:

(a) A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.

(b) Except as provided by Subsections (c) and (d) and § 49.09, an offense under this section is a Class B misdemeanor, with a minimum term of confinement of 72 hours.

(c) If it is shown on the trial of an offense under this section that at the time of the offense the person operating the motor vehicle had an open container of alcohol in the person's immediate possession, the offense is a Class B misdemeanor, with a minimum term of confinement of six days.

(d) If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor.

TEX. PENAL CODE. ANN. § 49.04. "Intoxicated" is defined as:

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B) having an alcohol concentration of 0.08 or more.

*Id.* § 49.01(2)(A)-(B) (West 2011); *see Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012); *see also Van Ness v. State*, No. 10-11-00079-CR, 2012 Tex. App. LEXIS 8781, at *3 (Tex. App.—Waco Oct. 18, 2012, no pet.) (mem. op., not designated for publication).

In *Crenshaw*, the Court of Criminal Appeals explained that:

A person commits the offense of DWI if the person is intoxicated while operating a motor vehicle in a public place. Intoxication is an element of DWI, and the Texas Penal Code sets out two definitions of intoxicated. The subjective definition of intoxicated is not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances, or any other substance into the body. The per se definition of intoxicated is having an alcohol concentration of 0.08 or more. These definitions overlap and are not mutually exclusive.

378 S.W.2d at 466 (internal quotations and citations omitted).

Essentially, the *Crenshaw* Court recognized that the intoxication element of DWI can be proven in two different ways. *See id.* It is because of the subjective definition

that I am troubled with the lead opinion's blanket statement that a defendant has a reasonable expectation of privacy in all medical records other than blood-test results. It is possible that information recorded in a defendant's medical records may be relevant to proving the subjective definition of intoxication—whether a defendant no longer has the normal use of mental or physical faculties by reason of the introduction of alcohol. For example, a review of Jewell's medical records reveals that Justin E. Evanson, M.D., noted that Jewell appeared intoxicated when he first arrived at the hospital.[2] Other records indicate that Jewell's eyes were red and that he was "incontinent of urine and stool"—both common characteristics of intoxication.[3]

Because the intoxication element of DWI can be proven in two different ways, and because Jewell's medical records contain relevant evidence with regard to the subjective definition of intoxication, I am reluctant to conclusively state that Jewell has an absolute and reasonable expectation of privacy in all of his medical records, other than the blood-test results. Furthermore, I do not see a distinction between blood-test results and information contained in medical records that proves the subjective definition of intoxication—both of which prove essential elements of the charged offense and arguably overcome any privacy interest a defendant may have. Therefore,

---

[2] I must also note that it appears that the medical records obtained by the State only address Jewell's treatment for the accident. These records do not appear to reference other medical conditions or treatments in Jewell's past.

[3] I am mindful that the information in Jewell's medical records about his red eyes and incontinence may also be evidence associated with the head injury he sustained as a result of the accident. However, in this case, we are analyzing the admissibility, not the weight, to be afforded evidence. *See* TEX. R. EVID. 401-02. Thus, I believe that the information about how Jewell's eyes were red when he first arrived at the hospital and how he was incontinent is relevant with respect to the subjective definition of intoxication. *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (West 2011); *see also Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

because I would not go so far as the lead opinion does with regard to Jewell's expectation of privacy in all of his medical records, other than the blood-test results, but agree with the remaining aspects of the lead opinion's judgment, I respectfully concur.


        AL SCOGGINS
        Justice


Concurring Opinion delivered and filed January 31, 2013
Do not publish

*(Chief Justice Gray joins the concurring opinion of Justice Scoggins)