**AFFIRMED; Opinion Filed May 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01072-CR

### EXZAYVIA COSBY, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 291st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F12-01027-U

## MEMORANDUM OPINION

Before Justices Myers, Evans, and O'Neill[1]
Opinion by Justice Evans

A jury convicted appellant Exzayvia Cosby of murder and sentenced him to thirty-five years' confinement. He brings three issues on appeal and argues the following: (1) the evidence is legally insufficient to convict appellant of murder; (2) a rational trier of fact could not have found appellant guilty of murder; and (3) the trial court erred by improperly charging the jury on the culpable mental state required for a murder conviction. Deciding appellant's issues against him, we affirm the trial court's judgment.

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

# I. BACKGROUND

On the evening of July 11, 2011, Tommy Booth spent the night at Jeffrey West's house. Orin Staples asked West to meet him outside for a smoke. West, Staples, and Booth met outside of West's home.

Friends saw appellant leave for the incident. That same evening Anthony Alexander, Darrielle White, and Shatela Harris went to Staples's house to pick up appellant and go back to Alexander's house. Jamichael Young and appellant were leaving Staples's house as the group arrived. White testified that Young and appellant were both dressed in dark clothes. Specifically, Young had a black bandana across his face and appellant had a mask on his head that was not pulled down to cover his face. Harris also confirmed that they were wearing dark clothes. White testified that she saw appellant pull the mask down over his face as he left and that it had holes for his eyes and mouth.

West saw the incident begin. West testified that around 3 a.m. a man dressed all in black approached the group with a handgun. The man was African-American, tall, very skinny and wore black skinny jeans, black shoes, a long black crewneck sweater, black gloves and a black ski mask. West saw the man with the gun approach Booth, point the gun at him and tell him to lay down. West testified that he took off running when Booth and the man with the gun began struggling over the gun.

Two neighbors heard the shots and saw the aftermath. One neighbor—John Wash—testified that he heard about four "pops" around 2:50 a.m. in the morning. Wash got up, looked out his bathroom window and saw one man lying on the ground and one man standing over him. Wash testified that he saw the standing man hitting the other man with what appeared to be a pistol before running away. Wash called 9-1-1 before going outside to check on the victim. Gregory Sneed—another neighbor—testified that he was awakened by gunshots around 2 or 3

–2–

a.m.  Sneed ran to his window and saw a man standing over another man.  Sneed testified the standing man appeared to be wearing all black and was either hitting or going through the pockets of the man lying on the ground.  Sneed ran outside and identified the man lying on the ground as Booth.

Friends heard the shots and appellant's statements afterwards.  After he ran, West also heard gunshots.  West spoke with Staples on his cell phone and went back to find Booth dead.  White testified that she too heard gunshots and then a minute later Young came running into Staples's house followed by appellant.  Both Harris and Alexander testified that Young ran back into Staples's house and said "he shot him."  Harris stated that Young seemed panicked and shaky and that Young was referring to appellant.  According to White, appellant had a gun in his hand and a bottle of pills when he returned.  Harris testified that she asked appellant what had happened and he stated "I shot him."  Harris further testified that she asked why he shot him, and appellant responded "because he tried to reach for the gun."  White also testified that appellant stated "I shot him."  Alexander testified that appellant said he pointed the gun at the victim to rob him and appellant pulled the trigger when the victim reached for the gun.  Harris testified that appellant said he and Young had planned to rob Booth.  White specifically testified that "[appellant] said that he went over there basically to rob him and that he told him to give him everything he had in his pockets, and then the man reached for the gun and he shot him."  White also stated that appellant told her that he gotten the pills and money from the man.  Harris stated that appellant told her he got $6 and a bottle of pills from the man.  Harris saw the bottle of pills but not the $6.

Acquaintances heard appellant's additional statements.  After these events, White, Harris, Alexander and appellant left Staples's house and went to Alexander's house.  Dervan McGowen testified that he was at his cousin Alexander's house when he overheard appellant say "I shot

–3–

him." McGowen also testified that appellant said something along the lines of "I went to go do this lick and it didn't go down right" and "I had to shoot him."

West identified appellant. The night of the shooting West told the police that the assailant sounded like appellant. West said he had known appellant for over a decade and that the man dressed in black sounded like appellant. Detective Phil Hardin—the lead investigator of the Booth homicide for the Dallas police department—testified that the witnesses described the suspect as a six foot tall or more, very skinny man wearing all black, gloves and ski mask. Harding testified appellant matched this physical description.

Alexander provided and then recanted appellant's alibi. Alexander testified that he initially provided appellant with an alibi when he spoke with the police because of his friendship with appellant. Alexander testified that his mother found out what had happened and his parents were outraged that Alexander had lied to the police. Alexander testified that went back to the police station with his parents, Harris, and White and told them the truth. He testified that he did not want to testify against appellant in court.

Appellant admitted to involvement. Harding interviewed appellant twice and at the end of the second interview, appellant admitted that he planned to rob Booth and went down there dressed in all black, black gloves and black ski mask. Harding also testified that appellant told him that he did not complete the robbery because someone else got to Booth first.

Dr. Jill Urban, a medical examiner and forensic pathologist, testified that she performed Booth's autopsy. Dr. Urban testified that she identified four gunshot wounds in Booth and one or two of those gunshots likely occurred while Booth was lying on the ground. Dr. Urban testified that Booth's cause of death was the gunshot wounds.

The jury found the appellant guilty and assessed a punishment of thirty-five years' confinement. Appellant then filed a notice of appeal.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

In his second and third issues, appellant contends the evidence is insufficient to support a finding of guilt for the offense of murder. When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

A person commits the offense of murder if such person "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1)-(2) (West 2011). Appellant argues that the State failed to present sufficient evidence at trial to convict him of murder. We disagree.

West physically described the suspect as a tall, very skinny African-American male wearing black skinny jeans, black shoes, a long black crewneck sweater, black gloves and a black ski mask. Sneed also testified that the suspect was wearing black clothing. Harding testified that, based on the information from witnesses, the physical description of the suspect was a six foot tall or more, very skinny man wearing all black, gloves and ski mask. Both White and Harris testified that appellant left Staples's house wearing dark clothing. White testified that appellant pulled a mask down over his face as he left. Harding also testified that appellant

–5–

admitted during his interview that he planned to rob Booth and went down there dressed in all black, black gloves and black ski mask.

West, who saw the suspect approach Booth and point a gun at him, testified that he saw the two men struggle over a gun. West testified he had known appellant for over a decade and that the man dressed in black sounded like appellant. Three separate witnesses—either friends or acquaintances of appellant—testified that they saw appellant leave, heard the gunshots, and saw appellant return and admit to the shooting. Appellant told these same witnesses that he shot the man because he reached for the gun. A fourth witness overheard appellant say "I shot him" and "I had to shoot him." Finally, Dr. Urban testified that Booth died from the gunshot wounds.

When considered in the light most favorable to the verdict, these facts were sufficient to demonstrate that appellant either (1) intentionally or knowingly caused the death of Booth or (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Booth's death. As the facts support a conviction of murder, we overrule appellant's second and third points of error.

### B. Charge Error Regarding Intent and Knowing

In his first issue, appellant argues that the trial court erred by including incorrect definitions of "intentionally" and "knowingly" in the jury charge. At trial, appellant did not object to the jury charge, but on appeal he argues that he was egregiously harmed by error in the charge. We disagree.

When we review claims of jury charge errors, we first decide whether there was error in the charge. *Ferguson v. State*, 335 S.W.3d 676, 684 (Tex. App.—Houston [14th Dist.] 2011, no pet.). If there was error and appellant objected to the error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, however, the appellant failed to object at trial—as in this

case—then the appellant will obtain a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Id.* Egregious harm is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defense theory. *Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information [revealed] by the record of the trial as a whole." *Trejo v. State,* 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

In this case, the jury charge clearly charges appellant with the offense of murder. The abstract portion of the charge then references the following definitions:

> A person commits the offense of MURDER if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

> A person acts "intentionally," or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to *engage in the conduct* or cause the result.

> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(emphasis added). The appellant argues that a jury cannot convict a defendant based solely on a finding that he intentionally engaged in conduct that happened to cause death. Accordingly, it

appears that appellant argues that he was harmed by inclusion of the italicized language above in the definition of "intentionally."[2]

The application section of the jury charge, however, does not make any reference to intentional conduct that "happened to cause death." Instead, the application paragraph allows for a guilty verdict only by intentional conduct:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that, on or about July 12th, 2011, in Dallas County, Texas, the defendant did unlawfully then and there intentionally and knowingly cause the death of Tommie Booth, an individual, by shooting said Tommie Booth with a firearm, a deadly weapon,

OR

> unlawfully did then and there intend to cause serious bodily injury to Tommie Booth and did then and there commit and [sic] act clearly dangerous to human life, to wit: shooting said Tommie Booth with a firearm, a deadly weapon, and did then and thereby cause the death of Tommie Booth, and [sic] individual, you will find the defendant guilty of Murder.

It is the application paragraph which applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *See Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). "'It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction.'" *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). The application paragraph "explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Id*. Accordingly, we should look to the application paragraph to determine whether the jury was correctly instructed in order to resolve a harm analysis. *Id.* "Where the application paragraph correctly instructs the jury, an error in the abstract instruction

---

[2] Appellant objects to a definition of "knowingly" that does not appear in the jury charge. The definition of "knowingly" which appears in the jury charge does not include the following sentence which appellant included in his brief: "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist."

is not egregious." *Medina v. State,* 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). With these principles in mind, we will proceed to conduct a harm analysis using the *Almanza* factors.[3] *See Dougherty v. State*, PD-1411-05, 2006 WL 475802, at *1 (Tex. Crim. App. March 1, 2006) (per curiam) (not designated for publication) (reversing appellate court that did not conduct analysis using all *Almanza* factors).

The first *Almanza* factor requires consideration of the entire jury charge. *See Almanza*, 686 S.W.2d at 171. Here, the application paragraph of the jury charge clearly provides that any conviction of appellant required a finding of a specific intent to commit the offense of murder. Accordingly, the charge as a whole does not weigh in favor of egregious harm. *See Medina,* 7 S.W.3d at 640.

The second *Almanza* factor involves the state of the evidence, including the contested issues and weight of the probative evidence. *See Almanza*, 686 S.W.2d at 171. As analyzed above, we determined that the facts were sufficient for the jury to have convicted appellant of murder. As such, the state of the evidence does not favor a finding of egregious harm.

The third *Almanza* factor involves the argument of counsel. *See Almanza*, 686 S.W.2d at 171. In its closing argument, the State noted that an intentional or knowing killing constitutes murder. The State argued that the medical evidence supported the conclusion that the appellant shot Booth while Booth was on the ground. Thus, the State argued as follows: "Isn't that [shooting at Booth on the ground] reasonably certain to cause the result of death? When he engaged in the conduct, conduct that reasonably certain to cause the result, that is a knowing killing. That is murder." The State did not, however, argue that a murder conviction could result from the appellant intentionally engaging in conduct that happened to cause death. Thus, the argument of counsel does not favor a finding of egregious harm.

---

[3] Although appellant mentions the *Almanza* factors, there is no application of the factors to a harm analysis.

The final *Almanza* factor addresses any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171. We are not aware of "any other relevant information" that we should consider.

Thus, in light of the *Almanza* factors, we are unable to conclude that appellant suffered egregious harm from the definition of "intentionally" in the abstract section of the jury charge. Accordingly, we overrule appellant's first issue.

### III. CONCLUSION

We resolve appellant's issues against him and affirm the trial court's judgment.

/ DAVID EVANS/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131072F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EXZAYVIA COSBY, Appellant

No. 05-13-01072-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F12-01027-U.
Opinion delivered by Justice Evans.
Justices Myers and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 21st day of May, 2015.