**AFFIRMED and Opinion Filed April 15, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00569-CR

**COREY WAYNE CHASE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-22-0770**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Reichek

Following a jury trial, Corey Wayne Chase appeals his conviction for aggravated assault family violence with a deadly weapon. In two issues, he complains of alleged error in the guilt/innocence charge and the punishment charge. We affirm.

## Background

Appellant was charged with intentionally or knowingly threatening imminent bodily injury to his wife Cherelle Griffin by threatening her with a handgun on February 19, 2022. Cherelle and appellant have two children together, and Cherelle

has a teenage son, C.S., from a previous relationship. Prior to trial, Griffin signed an affidavit of nonprosecution expressing her desire for the charges against appellant to be dropped.

At trial, the State first played a recording of a 911 call made by C.S. C.S. told the operator there was a domestic disturbance between his mom and his stepdad, appellant. He said appellant had a gun and fired a round. C.S. thought appellant was going to shoot himself or Cherelle. During the call, Cherelle spoke to the operator. She said appellant shot a round in the air and that everyone was okay.

Cherelle testified she and appellant were drinking on the night of the offense and argued. She left the house to sit in her car and cool down, then went back inside and fell asleep in the game room. At some point, appellant came into the room yelling. He had a gun. When the prosecutor asked how long it was before appellant fired the gun at the ceiling, Cherelle testified she did not see the "firing of a shot." Cherelle remembered that C.S. came out of his room. She did not remember telling him to call 911 or remember the 911 call.

Cherelle then said she was the one who fired the gun into the ceiling. She lied to the police about appellant shooting the gun. She had wanted to kill herself, but "freaked out" and did not carry through with her plan.

Cherelle told the jury she was in a happy marriage and did not have big problems. The prosecutor asked her about a previous assault. When asked if she remembered telling police in 2017 that appellant assaulted her, Cherelle did not

–2–

remember. Nor did she remember appellant assaulting her father that same night in 2017. The prosecutor gave Cherelle a written statement to refresh her memory, but Cherelle said it did not help. She did not remember appellant picking her up and throwing her down the steps of their house. On cross-examination, Cherelle testified she was responsible for what happened on February 19, 2022, and that was why she did not want appellant prosecuted.

C.S. was sixteen years' old at the time of trial. On the night of the offense, he heard his mom and appellant arguing. Later, he heard one gunshot and was scared. He ran out of his room and saw appellant, who was naked, holding a gun. There was a bullet hole in the ceiling. His mother sped past him and told him to call 911. She was upset and startled.

Tracy Griffin, Cherelle's father, testified that he and his wife live four doors down from Cherelle and appellant. In March 2017, Tracy and his wife went to Cherelle's house after getting a call from C.S. Cherelle was crying and hysterical and had bruises up and down her right side. Tracy spoke to appellant from some stairs outside the house and asked him if he caused the bruises. When Tracy turned away from appellant, appellant pushed him down the stairs. Appellant was arrested for assaulting both Tracy and Cherelle. Cherelle did not want appellant to be prosecuted then either. Appellant ended up pleading guilty to a reduced charge. In 2018, Tracy got a call from C.S., who was scared, saying his mom and appellant

–3–

were fighting. Tracy was out of town and spoke to appellant over the phone. Appellant told Tracy he should have "kicked [his] ass that night" in 2017.

Tracy learned of the February 2022 incident when a neighbor called to tell him the police were at Cherelle's house. Tracy took the children back to his house. The next day, he spoke to Cherelle and she told him appellant fired a gun inside the house. After a trial date was set, she told her father she was going to testify that she fired the gun.

Rockwall Sheriff's Sergeant Ryan Kindred was dispatched to appellant and Cherelle's house on the night of February 19, 2022. Appellant did not follow officers' instructions, and they ended up tasing him to take him into custody. One of the children told him appellant fired a shot inside the house.

Jessica Brazeal, a therapist who works with victims of domestic violence, testified about the repeating cycle of domestic violence and about how difficult it can be for someone in an abusive relationship to leave. In her experience, it was common for victims of domestic violence to want to protect the perpetrator. According to Brazeal, the firing of a gun over someone's head during an argument is an action intended to send a message to the victim and create fear.

Appellant testified that he and Cherelle argued on the night in question. Cherelle drank too much alcohol. He found her sleeping on the game room floor near a puddle of vomit. He helped her to the couch and went back to bed. When he checked on her later, he found her sitting on the couch holding a revolver. He tried

–4–

to take it from her and the gun accidentally went off. Cherelle fired the weapon, not him. She did not intentionally fire it. Appellant acknowledged that his version of events differed from Cherelle's testimony, but he said Cherelle was trying to minimize her mental issues.

Appellant testified about the 2017 incident. He pleaded guilty to assaulting his wife, not her father. He also testified he was convicted of family violence in 2003 and that his parents were the victims.

The jury found appellant guilty as charged in the indictment. Appellant elected for the jury to assess his punishment, and the jury assessed the maximum punishment of twenty years' confinement. Appellant made no objections to either the guilt/innocence charge or the punishment charge. This appeal followed.

## Guilt/Innocence Charge

In his first issue, appellant complains of the italicized portion of the following instruction given in the jury charge on guilt/innocence:

> You are instructed that if there is any evidence before you in this case regarding the defendant having committed offenses, wrongs, or acts, other than that offense alleged against him in the indictment in this case, you cannot consider such testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, wrongs or acts, if any were committed. *You are further instructed that you may consider facts and circumstances that assist you in determining whether the Defendant committed the offense of Aggravated Assault with a Deadly Weapon, as charged in the indictment, including evidence, if any, regarding the nature of the relationship between the Defendant and the alleged victim.* (Emphasis added.)

Appellant argues the italicized sentence was an improper comment on the weight of the evidence of his prior extraneous conduct.

The trial court must provide the jury with a written charge that sets forth the law applicable to the case. *Chambers v. State*, 663 S.W.3d 1, 3 (Tex. Crim. App. 2022); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14. All alleged jury-charge error must be considered on appellate review regardless of whether it was preserved in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We use a two-step analysis to review a claim of error in a jury charge. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). First, we determine whether the charge is erroneous. *Id.* We review a trial court's decision to include an instruction in the charge for an abuse of discretion. *See Chase v. State*, 666 S.W.3d 832, 834 (Tex. App.—Tyler 2023, pet. ref'd), *cert. denied*, 144 S. Ct. 580 (2024). If the charge is erroneous, then we must decide whether the appellant was harmed by the erroneous charge. *Alcoser*, 663 S.W.3d at 165.

The language appellant complains of is based on article 38.371 of the code of criminal procedure, which applies to family-violence prosecutions. *See* TEX. CODE CRIM. PROC. ANN. art. 38.371(a). Article 38.371(b) provides that "each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." *See id.* art. 38.371(b).

Appellant argues the instruction about the nature of his relationship with Cherelle improperly commented on the weight of the evidence because it accentuated his prior assaultive behavior. He relies on *Bartlett v. State*, 270 S.W.3d 147 (Tex. Crim. App. 2008), in support of his argument. In that DWI case, the trial court gave a lengthy instruction about the fact that the defendant refused a breath test, and the instruction described the parties' arguments about the significance of the refusal. *Id.* at 149, 152. Although evidence of the defendant's refusal to take a breath test was admissible, the court of criminal appeals concluded the instruction singling out that evidence was an impermissible comment on the weight of that evidence. *Id.* at 154. *Bartlett* is distinguishable. Here, the charge instructed the jury it could consider "evidence, *if any*, regarding the nature of the relationship between the Defendant and the alleged victim." (Emphasis added.) The instruction did not specify what that evidence might have been or single out any evidence for special attention and thus did not comment on the weight of any evidence. *See id.* at 152. The trial court did not abuse its discretion in giving the instruction. We overrule appellant's first issue.

## Punishment Charge

In his second issue, appellant argues the punishment charge erroneously instructed the jury that he was eligible to receive credit for good conduct time. The trial court gave the instruction mandated by the version of the code of criminal procedure article 37.07 § 4(a) that was in effect until August 31, 2019. *See* Act of

May 26, 2015, 84th Leg., R.S., ch. 770, § 2.08, 2015 Tex. Sess. Law Serv. 770

(current version at TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(a)). The charge

stated:

> Under the law applicable to this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

The charge then gave instructions regarding parole. Effective September 1, 2019,

article 37.07 § 4(a) was amended to delete any mention of good conduct time in the

required instruction.[1] TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(a).

The State agrees the instruction given was erroneous and so do we. Because

no objection was made to the charge, we consider whether the error egregiously

harmed appellant. *See Alcoser*, 663 S.W.3d at 165. Appellant argues he was

egregiously harmed because he was eligible for probation and instead received the

maximum sentence of twenty years in prison.

We assess harm in light of the entire jury charge, the state of the evidence,

including the contested issues and weight of the probative evidence, the argument of

---

[1] Article 37.07, § 4(a) now requires the following instruction: "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a).

counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on actual harm rather than theoretical harm. *Id.* Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one. *Id.*

Looking at the punishment charge as a whole, the jury was informed not to speculate about the application of good conduct time. The charged stated that it "cannot accurately be predicted how the parole law and good conduct time might be applied to this Defendant . . . because the application of these laws will depend upon decisions made by prison and parole authorities." The jury was told it could consider the existence of parole law and good conduct time but could not consider the extent to which good conduct time may be awarded to or forfeited by appellant. The charge further instructed "not to consider the manner in which parole law may be applied to this particular defendant" and "not to discuss among yourselves how long the accused would be required to serve the sentence that you impose." Absent evidence to the contrary, we presume the jury followed the charge and did not consider the manner in which good conduct time might affect appellant's incarceration. *See Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012).

Next, we consider the state of the evidence, including the contested issues and the weight of the evidence. Under this factor, we determine whether the evidence

–9–

made it more or less likely that the charge error caused appellant actual harm. *See Taylor v. State*, No. 05-20-00017-CR, 2022 WL 17335689, at *13 (Tex. App.—Dallas Nov. 30, 2022, pet. ref'd) (mem. op., not designated for publication).

During the punishment phase, the focus was on whether the jury should recommend community supervision or send appellant to prison. The State presented additional evidence of appellant's criminal history. In Rockwall County in January 2003, appellant pleaded guilty to unauthorized use of a motor vehicle and was placed on deferred community supervision for three years. Appellant eventually completed the terms and was discharged. In Collin County in April 2003, appellant was charged with misdemeanor assault/family violence against both his mother and stepfather on the same date. He pleaded guilty to the offenses and was sentenced to 15 days' confinement. In 2017, appellant was charged with assault causing bodily injury to Cherelle "by dragging [her] through the house and pushing [her] through the door." Appellant pleaded guilty to a lesser-included Class A misdemeanor and was placed on deferred community supervision for 18 months. He was discharged from community supervision in August 2019.

Amber Perez, a supervisor in the Rockwall County Adult Probation Department, testified about difficulties appellant had while on probation. For example, he failed to admit he had a substance abuse problem, failed to participate in counseling, and was combative with his probation officer. Perez did not think

–10–

appellant was a good candidate for probation because he did not take responsibility for his actions.

Appellant's testimony at punishment further revealed his failure to take responsibility for his actions. Although appellant pleaded guilty to the offenses involving his mother and stepfather, he disputed some of the elements of the offenses. For example, he denied tackling his mother and said instead that his stepfather pushed him into her. When asked what he learned in a batterer's intervention and prevention program that was part of his community supervision for the prior assault on Cherelle, appellant replied, "that my wife needs mental help and that I am stuck in this ring." We conclude that the state of the punishment evidence does not support a determination of egregious harm.

Third, we consider whether any arguments made by the parties or the trial judge exacerbated or ameliorated the charge error. *Patterson v. State*, No. 05-21-01024-CR, 2024 WL 861388, at *12 (Tex. App.—Dallas Feb. 29, 2024, no pet. h.) (mem. op., not designated for publication). During closing arguments at punishment, defense counsel asked the jury to grant probation, arguing that no one was hurt in the incident and that appellant had a job and children. Counsel acknowledged that appellant had not been previously successful on probation, but argued he deserved another chance. The prosecutor emphasized appellant's failure to take responsibility for his actions, both in the past and in connection with this offense. She argued appellant would not change and asked the jury to send appellant

to prison to protect his children and wife. There was no mention of good conduct time. This factor weighs against finding egregious harm.

Last, we consider any other relevant information, such as whether the jury sent requests for clarification during deliberations. *Taylor*, 2022 WL 17335689, at *13. The record does not contain any notes from the jury or give any indication that the jury needed clarification about good conduct time or parole. Appellant argues the error in the punishment charge was compounded by error in the guilt/innocence charge, but we have concluded the guilt/innocence charge was not erroneous.

After considering and weighing the relevant factors, we conclude the erroneous instruction regarding good conduct time did not cause egregious harm to appellant. There is nothing in the record to suggest the jury's decision to not grant probation and to assess the maximum punishment was a result of the good conduct time instruction. Given the state of the evidence, it is likely the punishment verdict was based on appellant's pattern of family violence and refusal to accept responsibility for his actions. The erroneous instruction did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory. We overrule appellant's second issue.

We affirm the trial court's judgment.


Do Not Publish

Tᴇx. R. Aᴘᴘ. P. 47.2(b).

230596F.U05

/Amanda L. Reichek/

AMANDA L. REICHEK

JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | | |
|---|---|---|
| COREY WAYNE CHASE, Appellant | | On Appeal from the 382nd Judicial District Court, Rockwall County, Texas |
| No. 05-23-00569-CR | V. | Trial Court Cause No. 2-22-0770. Opinion delivered by Justice |
| THE STATE OF TEXAS, Appellee | | Reichek. Justices Molberg and Smith participating. |

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of April, 2024.