COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DIEGO AGUIRRE, | § | No. 08-20-00057-CR |
| Appellant, | § | Appeal from the |
| v. | § | 394th District Court |
| THE STATE OF TEXAS, | § | Of Culberson, Texas |
| Appellee. | § | (TC # 1827) |

# **O P I N I O N**

Appellant, Diego Aguirre, appeals from a jury verdict finding him guilty of driving while intoxicated, third or more. TEX. PENAL CODE ANN. §§ 49.09(b), 49.04(a). In two issues, Appellant challenges his conviction asserting his right to a speedy trial was violated and the evidence was legally insufficient. We affirm.

### *Factual Background*

### **Appellant's arrest**

On February 20, 2019, Trooper Javier Ramirez of the Texas Department of Public Safety's ("DPS") Highway Patrol Division was on routine highway patrol in Culberson County, Texas. At approximately 2:55 p.m., Trooper Ramirez observed, what was later confirmed to be Appellant's vehicle, traveling westbound at a high rate of speed. Trooper Ramirez used his radar to determine

the vehicle was traveling 102 miles per hour in an area with a posted speed limit of 80 miles per hour. Trooper Ramirez initiated his overhead lights and pulled Appellant over for speeding. After conducting the stop, Trooper Ramirez made contact with Appellant, who was the sole occupant of the vehicle. Trooper Ramirez immediately noticed a crushed can of beer, which appeared to be shoved or attempted to be concealed from his point of view. Appellant acted extremely passive, looked extremely fatigued, and had bloodshot eyes and slurred speech. Appellant also had trouble locating his insurance.

Appellant claimed he had consumed alcohol the night before and denied having consumed alcohol that day. Trooper Ramirez decided to remove Appellant from the vehicle to determine whether the strong odor of alcohol was coming from the vehicle or Appellant's person. He confirmed the strong odor of alcohol came from both Appellant's person and vehicle. Trooper Ramirez then conducted Standardized Field Sobriety Testing ("SFST") on Appellant, which included the horizontal-gaze-nystagmus ("HGN") test, the walk and turn test, and the one-legged stand test. Appellant's performance on the SFSTs, coupled with his bloodshot eyes, slurred speech, the strong odor of alcohol emanating from the vehicle and Appellant's person, the open containers, and his implausible storyline of when he claimed to be drinking, led Trooper Ramirez to believe Appellant was intoxicated. Appellant was thereafter arrested for DWI.

Appellant refused to provide a breath specimen and Trooper Ramirez subsequently secured a search warrant for a specimen of Appellant's blood. Approximately three hours after the traffic stop, Culberson County Hospital staff drew Appellant's blood pursuant to the signed warrant and testing of Appellant's blood showed a BAC of 0.075. An inventory search of Appellant's vehicle further revealed two empty beer cans in the center console and an open 12-pack of beer bottles located in the back of the vehicle—one bottle was missing from the 12-pack.

**Pretrial events**

Appellant was indicted on April 5, 2019. On May 7, 2019, Appellant was found indigent and was appointed counsel from the Far West Texas Regional Public Defender's Office. That same day, Appellant waived his arraignment and the trial court set: (1) a pretrial hearing for June 4, 2019, with a deadline to file all pretrial motions seven days before that date; and (2) a plea-deadline hearing for July 2, 2019. At the June 4th pretrial hearing, counsel for Appellant acknowledged he had not timely filed any motions pursuant to Article 28.01 of the Texas Code of Criminal Procedure. Appellant's counsel also agreed he would be conferring with the State regarding plea negotiations between that date and the plea deadline. At the hearing for the plea deadline, Appellant rejected the State's plea and both parties announced ready for trial.

On July 17, 2019, Appellant filed a motion for speedy trial. The following day, July 18, 2019, Appellant filed a motion for leave to file late motions, stating he believed he had filed standard Article 28.01 motions as is customary practice, but had not. Appellant concurrently filed a: (1) motion to list the State's witnesses; (2) motion for the State to disclose Brady evidence; (3) motion for discovery pursuant to Article 39.14 of the Texas Code of Criminal Procedure; and (4) request for notice of extraneous offense. The trial court did not explicitly rule on the motion for leave to file late motions, but on September 27, 2019, the State filed its: (1) notice of extraneous offenses; (2) notice of felony enhancement; (3) notice of *Brady* evidence; and (4) notice of prospective witnesses.

On November 25, 2019, Appellant filed its motions to dismiss for lack of speedy trial . On December 3, 2019, the trial court held a hearing on the motion. Appellant argued his incarceration was presumptively prejudicial. The State acknowledged the trial court had set a trial date for October 2019, but it was difficult to set cases for trial due to it being the largest district in

3

Texas and has only one judge in a five-county district. The State iterated Appellant had not filed for an examining trial, which weighed against a finding of presumptively unreasonable delay. The State further relied on its response to the speedy trial motion, which argued: (1) pretrial plea negotiations and scheduling conflicts in the court had created delay in the case; and (2) Appellant had framed his motion as a request for a dismissal of the case rather than a trial, which also weighed against a finding of a violation of the right to a speedy trial. The trial court took note: (1) Appellant was arrested in February 2019, indicted in April 2019, and filed his first speedy trial motion in July 2019; and (2) the trial court scheduled the case for trial in October 2019 and arranged for a visiting judge to preside over trial, but the court reporter cancelled immediately prior to the trial and, "despite Herculean efforts to find someone else, [the court] was unable to do so." The trial court held the delay was not presumptively prejudicial, denied Appellant's motion to dismiss for lack of speedy trial, and set trial for January 27, 2020. Trial commenced on January 27, 2020.

### *Procedural Background*

Appellant was indicted of one count of driving while intoxicated, third or more. TEX. PENAL CODE ANN. §§ 49.09(b), 49.04(a). Following a trial, the jury found Appellant guilty as charged in the indictment. The trial court assessed punishment at eight year's confinement in the Texas Department of Criminal Justice Institutional Division, probated for eight years. This appeal followed.

### DISCUSSION

In two issues, Appellant challenges his conviction. In Issue One, Appellant asserts his right to a speedy trial was violated. In Issue Two, Appellant challenges the sufficiency of the evidence to support his conviction.

### SPEEDY TRIAL

4

In his first issue, Appellant argues his right to a speedy trial, as guaranteed by the Sixth Amendment of the U.S. Constitution, was violated.

### Standard of Review & Applicable Law

The U.S. Constitution guarantees an accused the right to a speedy trial, as does the Texas Constitution. *See* U.S. CONST. AMEND. VI; TEX. CONST. art. I, § 10. The United States Supreme Court has stated it is impossible to determine with precision when the right to a speedy trial has been denied because there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 521 (1972). Thus, a speedy trial inquiry necessitates a functional analysis of the right in the particular context of the case. *Id*. at 522. The Court established a framework in which four factors are analyzed in determining whether the right was violated. *Id.* at 530. The four *Barker* factors include: (1) the length of delay; (2) the reason for delay; (3) the accused's assertion of the right; and (4) prejudice to the accused. *Id*. None of the factors are either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; rather, they are related factors to be considered together with such other circumstances as may be relevant. *Id*. at 533. The four factors must be balanced by the facts of each case. *Id*. at 533-34.

In reviewing an appellant's speedy trial claim, we apply a bifurcated standard of review—an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components. *See Cantu v. State*, 253 S.W.3d 273, 282 (Tex.Crim.App. 2008). Although review of the *Barker* factors involves both fact determinations and legal conclusions, the balancing test as a whole is a purely legal question. *Id*. And, when as here, an appellant lost in the trial court on his speedy trial claim, we presume the trial judge resolved any disputed fact issues in the State's favor and we defer to the implied findings of fact the record supports. *Id*.

*Analysis*

**Barker Factors**

### 1. Length of the delay

The length of the delay is the triggering mechanism to a *Barker* analysis. *Barker*, 407 U.S. at 530. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the following factors. *Id*. The Texas Court of Criminal Appeals has held that although there is no set time element that triggers the analysis, a delay of four months is not sufficient while a delay of seventeen months is. *Cantu*, 253 S.W.3d at 281. Nevertheless, in general, a delay approaching one year is sufficient to trigger a speedy trial inquiry. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003). Length of the delay is measured from the time the accused is arrested or formally accused. *Id*.

Here, Appellant was arrested on February 20, 2019 and indicted on April 5, 2019. His jury trial began on January 27, 2020, amounting to a delay of eleven months. This time is sufficient to trigger an inquiry into the remaining *Barker* factors.

### 2. Reason for the delay

Closely related to the length of delay is the reason to justify the delay. *Barker*, 407 U.S. at 531. Different weights should be assigned to different reasons. *Id*. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily against the State, whereas a valid reason, such as missing witnesses, should serve to justify delay. *Id*. However, deliberate attempts by the State to delay the case should weigh heavily against the State.

Here, Aguirre was arrested on February 20, 2019 and his jury trial began on January 27, 2020, amounting to a delay of eleven months. At the start of our analysis, we recognize the State is entitled to a reasonable amount of time—at least three months—to prepare its case. *Shaw*, 117

6

S.W.3d at 889-90 (Finding the three-month interval between appellant's indictment and first date of trial may not be counted against the State, since the State was entitled to a reasonable period in which to prepare its case.). As such, and as the State argues, three months out of the eleven-month timeline will not be held against the State. *See id*. The State further argues the period in which good faith plea negotiations took place should not be held against it. *See State v. Munoz*, 991 S.W.2d at 824 ("We decide delay caused by good faith plea negotiations is a valid reason for the delay and should not be weighed against the prosecution."). Thus, the period between May 7, 2019—Appellant's arraignment, which he waived—and July 2, 2019—the plea deadline—factors in two months that cannot be held against the State. *See id*.

Additionally, at the hearing held on July 2, 2019, the State announced ready for trial. The State argues this further suggests the record does not support the State caused any delay in bad faith. The State concludes for these reasons, at least five months of the delay should not be held against it. We agree.

Next, we turn to the remaining six months of the delay. Appellant was not appointed counsel until May 7, 2019. This two-month delay should only be held lightly against the State considering the delay is attributed to the trial court. *See Shaw*, 117 S.W.3d at 890. Further, the trial court set the case for trial in October 2019 and scheduled a visiting judge to preside over the trial; however, the court reporter became unavailable at the last minute and "despite Herculean efforts to find someone else, [the court] was unable to do so." The court set the next trial date for January 27, 2020 and the case was tried on that date. The State stresses because these reasons for delay are attributed to the nature of the court's docket, they also weigh only lightly against it. We agree. *See Shaw*, 117 S.W.3d at 890 ("[A] crowded court docket is not a valid reason for delay and must be counted against the State, although *not* heavily.")[Emphasis added].

7

We find the record does not suggest the State caused any delay in bad faith. At least five months of the delay do not weigh against the State, while the remaining six months weigh only slightly against the State.

### 3. The accused's assertion of the right

Although an accused who fails to demand a speedy trial does not waive his right, this does not mean he has no responsibility to assert his right. *Barker*, 407 U.S. at 528. The better rule, as articulated by the Court, is an accused's assertion of, or failure to, assert his right to a speedy trial, is one of the factors to be considered in an inquiry into the deprivation of the right. *Id*. The burden is on the accused to prove his timely assertion of the right. *Cantu*, 253 S.W. 3d at 280. This burden varies inversely with the State's degree of culpability for the delay—the greater the State's bad faith or official negligence and the longer it delays trial, the less a defendant must show actual prejudice or diligence in asserting his right to a speedy trial. *Id*. The accused's assertion of his speedy trial right is entitled to strong evidentiary weight. *Barker*, 407 U.S. at 531-32. A failure to assert the right will make it difficult to prove the denial of a speedy trial. *Id*. at 532.

Accordingly, Appellant's assertion of his right is heightened because there is no showing of bad faith on behalf of the State. *See Cantu*, 253 S.W.3d at 280. On July 17, 2019, Appellant filed a motion for speedy trial. In this motion, he requested a trial setting prior to August 1, 2019. However, on November 25, 2019, Appellant filed a motion to dismiss for lack of speedy trial. The State argues, although Appellant filed a motion for speedy trial approximately five months after his arrest, his subsequent pleadings demonstrate he sought dismissal of the case. We agree; no trial and a speedy trial are not one in the same. *See Zamorano v. State*, 84 S.W.3d 643, 651 n.40 (Tex.Crim.App. 2002)("Appellant's motion was framed as a motion to dismiss. This fact potentially weakens appellant's case, as 'a dismissal instead of a speedy trial weakens [a speedy

trial] claim because it shows a desire to have no trial instead of a speedy trial.'")[Citations omitted]. Accordingly, this factor weighs against Appellant.

**4. Prejudice to the accused**

Prejudice should be assessed in the light of the interests of the accused which the speedy trial right was designed to protect. *Barker*, 407 U.S. at 532. There are three such interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility the defense will be impaired. *Id*. The most serious is the last. *Id*. The burden is on the accused to demonstrate sufficient prejudice to warrant dismissal. *See Cantu*, 253 S.W.3d at 280.

1. Pretrial incarceration

In his motion for speedy trial, Appellant asserted his pretrial incarceration caused the loss of his job and housing. In his brief, Appellant does not make specific claims of prejudice. Rather, Appellant argues the burden shifted to the State to disprove prejudice because the first three *Barker* factors weigh in his favor. On appeal, Appellant presents no allegations of the prejudicial effects of his eleventh-month incarceration. This sub-factor does not weigh in Appellant's favor.

2. Anxiety and concern

Again, Appellant does not assert he suffered from any unusual anxiety or concern as a result of his criminal charges. Neither in his motion to dismiss for lack of speedy trial or on appeal does he assert anything relevant to this sub-factor. *See Cantu*, 253 S.W.3d at 285–86 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation."). This sub-factor does not weigh in Appellant's favor.

3. Impairment of the defense

As stated above, this is the most serious type of prejudice. *Barker*, 407 U.S. at 532. Again, Appellant has not alleged any facts to demonstrate his defense was impaired. To the contrary, Appellant states in his brief, "The delay in this case was particularly egregious because of how *simple the case was . . . .*"[Emphasis added]. Without assertions by Appellant, he has failed to meet his burden. This sub-factor does not weigh in Appellant's favor.

In sum, balancing of the *Barker* factors leads us to conclude Appellant's right to a speedy trial was not violated. Although the first factor—the eleventh-month delay—and the second factor—the delay being mostly attributed to the trial court—weigh against the State, we find they only weigh *slightly* against the State. The third factor—assertion of the right—weighs against Appellant given he framed his motion for speedy trial as a dismissal rather than a trial, and Appellant has failed to show prejudice—the fourth factor. Under the bifurcated standard of review, the trial court did not abuse its discretion in its factual determinations, and the *de novo* standard compels us to find it did not error in its legal conclusions. *See Cantu*, 253 S.W.3d at 282. Appellant was not deprived of his right to a speedy trial.

Issue One is overruled.

**SUFFIENCY OF THE EVIDENCE**

***Standard of Review & Applicable Law***

In his second issue, Appellant argues the evidence was legally insufficient to prove he was intoxicated, a statutory requirement of his conviction.

***Standard of Review***

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The critical inquiry in a legal sufficiency challenge is whether the evidence in the record

10

could reasonably support a conviction of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

When reviewing the legal sufficiency of the evidence, we must view all the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014)(citing *Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

A person commits DWI if he is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a). Intoxication is an element of the offense driving while

11

intoxicated ("DWI"). *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex.Crim.App. 2012). The Texas Penal Code has established two definitions of "intoxicated"—a subjective definition and a per se definition. TEX. PENAL CODE ANN. § 49.01(2)(A). The two definitions set forth alternative means by which the State may prove intoxication; thus, a finding of *either* definition suffices to prove intoxication. *Crenshaw*, 378 S.W.3d at 466.

The subjective definition is "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of these substances, or any other substance in the body." TEX. PENAL CODE ANN. § 49.01(2)(A). The per se definition is having an alcohol concentration of 0.08 or more. *Id.* at § 49.01(2)(B). The two definitions overlap and are not mutually exclusive. *Crenshaw*, 378 S.W.3d at 466. Because the definitions of intoxicated are purely evidentiary matters, we turn to the evidence to determine whether intoxication was sufficiently proved. *See id.*

*Analysis*

Appellant argues the evidence was insufficient under both the subjective and per se definitions. However, the evidence is sufficient if it meets either definition.

### 1. Subjective definition of intoxicated

Appellant was pulled over for traveling 102 miles per hour in an area of the interstate with a posted speed of 80 miles per hour. When Trooper Ramirez made contact with Appellant's vehicle, he immediately saw a crushed can of beer, which appeared to be shoved or attempted to be concealed from his point of view. Trooper Ramirez testified Appellant acted extremely passive, looked extremely fatigued, and had bloodshot eyes and slurred speech. Appellant also had trouble locating his insurance. Trooper Ramirez decided to remove Appellant from the vehicle to determine whether the strong odor of alcohol was coming from the vehicle or Appellant's person.

12

He confirmed the strong odor of alcohol came from both Appellant's person and vehicle. The presence of the open containers in Appellant's vehicle, the strong odor of alcohol emanating from the vehicle and Appellant's person, Appellant's bloodshot eyes and slurred speech, and Appellant having difficulty locating his proof of insurance, led Trooper Ramirez to suspect Appellant was intoxicated. Trooper Ramirez decided to conduct SFSTs and Appellant complied.

Trooper Ramirez had Appellant perform the HGN test, the walk and turn test, and the one-legged stand test. Out of the possible six clues, Trooper Ramirez observed Appellant demonstrate three clues during the HGN test. Regarding the walk and turn test, Trooper Ramirez initially testified that out of a possible eight clues, he observed Appellant demonstrate two clues: missing heal to toe and making an improper turn. However, after re-watching the video of the stop, Trooper Ramirez clarified he only observed one of the clues: starting the test early. Trooper Ramirez did not observe any clues on the one-leg stand test. Trooper Justin Williams of DPS, who assisted at the scene, was asked to perform the HGN test on Appellant for a second time to "verify" the results. Trooper Williams testified he observed Aguirre demonstrate six out of a total of six possible clues on the HGN test. Trooper Williams asked Aguirre to perform a breath test using a portable breath test, but Appellant refused.

Based on the totality of the circumstances, and viewing the evidence in the light most favorable to the verdict, we find a rational juror could have found Appellant was intoxicated under the subjective definition. *See Isassi*, 330 S.W.3d at 638.

2. **Per se definition of intoxicated**

The State offered a lab report showing a BAC of 0.075. The State did not offer scientific evidence of retrograde extrapolation and did not call any witnesses to testify as to the lab results. However, the State did introduce a "common sense" plea to the jury regarding retrograde

extrapolation. The relevant trial testimony follows:

> THE STATE: The law is clear. So long as the State does not mention the, like Defense stated, kind of the scientific base or scientific expert as to extrapolation. It is however still allowable under the law for the State just to make a common sense plea to the jury, of course not get into the science of that or what that means in this particular test. It is not our intent to argue anything other than the common sense that can be inferred from what the witness has testified to and the evidence that's before the jury.

> .          .          .

> THE COURT: I anticipate what you mean is three hours -- the alcohol in someone's system is going to start to dissipate at some point, and that three hours later you can anticipate that their blood alcohol is going to be lower than it was when they were stopped. Is that -- am I correct?

> THE STATE: Correct in the inference, but it's not our intent to argue that specific point, just for them to pay attention to the timelines of how this case happened, the investigation how it went, and that there was a delay from the time of the arrest to the blood draw, and that it's up to them to decide what they think if that's worth anything or worth nothing.

> THE COURT: All right. Well, that's all in evidence . . . .

The testimony was permitted and heard before the jury.

It is settled law that a "BAC-test result, by itself, is not sufficient to prove intoxication at the time of driving. There must be other evidence in the record that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test." *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex.Crim.App. 2010). Because Appellant's BAC was under the legal limit, and because a lab report of the BAC in and of itself is insufficient to support Appellant was intoxicated, we need not conduct further analysis under the per se definition.

In sum, under the totality of the circumstances, the State presented legally sufficient evidence to show Appellant was intoxicated under the subjective definition—Appellant lost the normal use of his mental and or physical faculties while operating a motor vehicle. TEX. PENAL CODE ANN. § 49.01(2)(A). Because the definitions are not mutually exclusive, and because the

14

trier of fact is the sole judge of the weight and credibility of the evidence, we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *See Crenshaw*, 378 S.W.3d at 466; *see also Dobbs*, 434 S.W.3d at 170. A rational juror could have found Appellant was intoxicated under the subjective definition; therefore, the evidence is legally sufficient.

Issue Two is overruled.

## CONCLUSION

For these reasons, we affirm.

August 10, 2022

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, J.J.

15