**Affirmed and Opinion Filed November 30, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00984-CR

**GREGORY SCOTT HUBE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause No. 003-86842-2019**

## MEMORANDUM OPINION
Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Myers

A jury found appellant Gregory Scott Hube guilty of misdemeanor driving while intoxicated and the trial court assessed punishment of twelve months' probation. In two issues, appellant alleges jury charge error and challenges the admission of the blood alcohol concentration (BAC) results. We affirm.

### DISCUSSION

### 1. JURY CHARGE

In his first issue, appellant argues the exclusion of the "per se" definition of intoxication from the jury charge was charge error resulting in egregious harm. The State responds that, assuming charge error, appellant was not egregiously harmed.

The record shows that a City of Allen police officer, Robert Yanez, initiated a traffic stop of appellant's vehicle for a defective brake light at approximately 2:00 a.m. on July 20, 2019. Appellant traveled approximately a half-mile, or for about three minutes, before pulling over. Before doing so, he almost hit the curb and made a lane change without using his blinker. Officer Yanez testified that after he approached the driver's side window of appellant's vehicle and started speaking with him, the odor of alcohol emanated from inside appellant's vehicle. Appellant also had, according to the officer's testimony, "very watery eyes and slurred speech." He admitted to drinking alcohol that night, telling the officer, when asked how much alcohol he consumed that evening, "he had a couple." The officer asked appellant for a numerical answer, and appellant replied, "A couple normally means one or two." Appellant stumbled over his words and hesitated when responding to officer's questions, and his answers were "drawn out." He refused to step out of his car after being asked to do so "numerous" times[1] He refused to perform the standardized field sobriety tests (SFSTs). Based on Officer Yanez's observations of the initial traffic stop (e.g., appellant's vehicle almost striking a curb and failing to signal lane changes), the smell of alcohol, slurred speech, watery eyes, appellant's admission of consuming alcohol, and his refusal to take the SFSTs, the officer placed appellant

---

[1] Officer Yanez estimated he asked appellant to get out his vehicle more than ten times.

under arrest for DWI and transported him to the Allen Police Department.[2]

Appellant refused to give a sample of his blood after being read the statutory warnings. Officers obtained a warrant and appellant's blood was drawn by a nurse at Presbyterian Hospital sometime after 4:00 a.m. Appellant's BAC was 0.122. The trial court admitted the results of appellant's blood test over defense counsel's relevance and rule 403 objections, but the court did not allow the State to elicit testimony regarding "retrograde extrapolation."[3] At the charge conference, the trial court refused to submit the "per se" definition of intoxication in the jury charge, over the State's objection. Appellant did not object to the court's charge or its refusal to submit the "per se" definition of intoxication to the jury.

During closing arguments, defense counsel argued that "[t]his is simply a case of missing testimony, missing evidence, missing videos, even a missing definition of intoxication." He argued the State did not bring "enough evidence of the quantity and quality to convince you beyond a reasonable doubt that [appellant] lost the normal use of his mental and physical faculties while he was . . . driving that night." He emphasized that the State could not prove beyond a reasonable doubt that appellant's BAC was .08 or more at the time he was driving, and so it was not in the

---

[2] Copies of Officer Yanez's body camera and dash camera footage were admitted into evidence without objection.

[3] By statute, the definition of intoxication looks to the time when the defendant was operating a motor vehicle, not to when testing occurred. TEX. PENAL CODE § 49.01(2). "Retrograde extrapolation is the computation back in time of the blood-alcohol level—that is, the estimation of the level at the time of driving based on a test result from some later time." *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim. App. 2001) (footnote omitted).

jury charge. Counsel said the State did not bring the evidence they promised, and that if the jury thought appellant's BAC was a .08 or more at the time of driving, they could not find him guilty for that reason. But they had to find appellant guilty if they concluded beyond a reasonable doubt that he no longer had the normal use of his mental or physical faculties at the time he was driving. Counsel pointed out that the absorption and elimination rates of alcohol are not based on comprehensive studies and are dependent on physiology and other factors. He argued that only one officer testified that appellant did not have the normal use of his mental and physical faculties and contended that, based on the lack of testimony from other individuals such as the nurse who drew appellant's blood or Officer Garcia, who was with Yanez from the beginning of the traffic stop, appellant did not have watery eyes or slurred speech. Counsel urged the jury to watch the video evidence for themselves and use their common sense.

The State argued during its closing arguments that appellant did not have the normal use of his mental or physical faculties, and that was the definition of intoxication. They acknowledged they did not have a blood score for when appellant was driving, but they did have one for two hours later. The State focused on appellant's behavior and attitude as indicative of impairment intoxication. The State also argued that, based on blood analyst Alyssa Brezinsky's testimony that the average elimination rate for getting alcohol out of the body was .01 to .03 per hour, if the jury did the math, appellant was still over the legal limit.

We review complaints of jury charge error by first determining whether error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Keller v. State*, 604 S.W.3d 214, 229 (Tex. App.—Dallas 2020, pet. ref'd). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Keller*, 604 S.W.3d at 229. When, as in this case, the alleged jury charge error was not objected to, we reverse only if the error "was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Keller*, 604 S.W.3d at 229. "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). We assess harm in light of "the entire jury charge, the state of the evidence (including the contested issues and the weight of probative evidence), the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). We will not reverse a conviction unless the defendant has suffered actual rather than theoretical harm. *Villarreal*, 453 S.W.3d at 433. Because appellant did not object to the court's charge or its refusal

–5–

to submit the "per se" definition of intoxication to the jury, he must show egregious harm.  *See Almanza*, 686 S.W.2d at 171.

The jury charge in this case defined "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body."  *See* TEX. PENAL CODE § 49.01(2)(A).  Intoxication under this "impairment" theory of intoxication may be proven by direct or circumstantial evidence, and to establish this element, the latter is as probative as the former.  *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see also Bagheri v. State*, 119 S.W.3d 755, 756 n.1 (Tex. Crim. App. 2003).  The term "intoxicated" also means "having an alcohol concentration of 0.08 or more."  TEX. PENAL CODE § 49.01(2)(B).  The charge did not include this "per se" definition of intoxication.  *See Bagheri*, 119 S.W.3d at 756 n.1.  The trial court's ruling therefore required the State to show appellant did not have the normal use of his mental or physical faculties due to the introduction of alcohol into his body to prove intoxication.  *See* TEX. PENAL CODE § 49.01(2)(A); *Bagheri*, 119 S.W.3d at 762.

Appellant argues that because the definition of "intoxicated" in the charge lacked the "per se" definition, "[t]he most contested element in the trial was not fully defined and incomplete as charged," and considering the evidence and arguments, it confused the jury.  The record, however, does not support these arguments.  Assuming (without deciding the issue) that there was charge error, the exclusion of

one of the definitions of intoxication did not authorize the jury to find appellant guilty on anything less than every element of the offense, nor deprive him of his right to a unanimous verdict. *See* TEX. PENAL CODE §§ 49.01(2), 49.04(a). The definitions simply set forth alternate means by which the State may prove intoxication, rather than alternate means of committing the offense. *Bagheri*, 119 S.W.3d at 762. The conduct proscribed is the act of driving while intoxicated, which does not change whether the State uses the "per se" definition or the impairment definition to prove the offense. *Id.* Therefore, the charge was not incomplete; it merely eliminated one of the ways the State might have used to prove intoxication. The jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012).

As for the potential to confuse the jury, defense counsel told the jury the State did not bring enough evidence to prove beyond a reasonable doubt that appellant's BAC was .08 or more, so it was not included in the charge. He argued that even if the jurors believed appellant's BAC was .08 or more, they could not find him guilty for that reason alone. Appellant argues that trial counsel's statement "had to be incredibly confusing for the jury to try to follow," but the jury was made aware during voir dire of the definitions of intoxication, and that appellant must be intoxicated at the time of driving. The evidence showed that over two hours passed between the time appellant was pulled over and the time of the blood draw. Defense

–7–

counsel spent time during voir dire discussing how it was possible for someone to not be intoxicated at the time of driving but exceed the legal limit by the time of the test. He also tried to undermine the State's theory that appellant's BAC exceeded the legal limit by discussing general views of scientific evidence, the margin of error for blood alcohol tests, and how the evidence would show appellant did not exhibit "intoxicated BAC." Far from vitally undermining appellant's defense, *e.g., Villarreal*, 453 S.W.3d at 441, the omission of the "per se" definition strengthened the defensive theory that appellant was not intoxicated while driving.

We conclude, therefore, that assuming jury charge error in not including the "per se" definition of intoxication in the charge, it did not cause egregious harm. We overrule appellant's first issue.

## 2. RULE 403

In his second issue, appellant argues the length of time between driving and the blood draw made the "BAC results prejudicial without retrograde and full definition of intoxication." The State responds that the trial court did not abuse its discretion in admitting the blood test results because the results were probative of intoxication under the impairment theory, and its value was not substantially outweighed by the danger of unfair prejudice because it related directly to the charged offense.

Rule 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Probative value is the measure of how strongly the evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Unfair prejudice refers to a tendency to tempt the jury into finding guilt on an improper basis, such as an emotional one. *Id*. Confusion of the issues refers to "a tendency to confuse or distract the jury from the main issue in the case." *Id*.

When undertaking a rule 403 analysis, a trial court balances:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018) (quoting *Gigliobianco*, 210 S.W.3d at 641–42); *see also Baker v. State*, No. 05-19-01051-CR, 2021 WL 1826829, at *2 (Tex. App.—Dallas May 7, 2021, pet. ref'd) (mem op., not designated for publication). In practice, however, "these factors may well blend together." *Gigliobianco*, 210 S.W.3d at 642. We review a trial court's ruling regarding the admission of evidence for an abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).

The rule 403 factors here weigh in favor of admission. The blood test results of 0.122 were probative of intoxication. Although the jury was not charged on the "per se" theory, the definitions of intoxication "are not mutually exclusive, and there is considerable overlap between the two." *Crenshaw*, 378 S.W.3d at 467. Accordingly, evidence supporting a finding that a defendant was intoxicated under one definition may also be used to prove intoxication under another. *See id*.; *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) (defendant's breath test results "tend to make it more probable that he was intoxicated at the time of driving under both the per se and impairment definitions of intoxication. Mechler concedes that this factor weighs in favor of admissibility.").

In addition, the admission of the blood test results did not have the potential to impress the jury in an irrational way or distract them from consideration of the charged offense. The jury could consider the challenged evidence, which directly related to the charged offense, as probative of impairment intoxication. As the State told the jurors in its closing argument:

> You have evidence of the body cam, dash cam. You have the lab report. All of this tells you that this defendant was intoxicated at the time he was driving. The reason he stalled, the reason he tried to stop[,] to delay—he did everything he possibly could to delay this investigation because he knew all of that.

Appellant also complains about the length of time between the traffic stop and the blood draw, arguing his blood was drawn two hours and nineteen minutes after he was pulled over by Officer Yanez. But notwithstanding the fact that a little over

two hours passed between the traffic stop and the blood draw, the results showing appellant had a BAC of 0.122 indicated he had consumed alcohol—a fact highly probative of impairment intoxication. *See Sung Mo Hong v. State*, No. 05-09-00677-CR, 2010 WL 2510333, at *1, *4–6 (Tex. App.—Dallas June 23, 2010, no pet.) (not designated for publication) (breath test results probative of ultimate issue of whether appellant was driving while intoxicated even though breath test administered two hours after appellant's arrest). Moreover, the admission of the results did not affect the defensive theory that appellant's BAC climbed from below the legal limit at the time of driving to above the legal limit at the time of the test. Nor did it irrationally impress the jurors because they had been prepared for the admission of the blood test results since voir dire. Thus, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, and the trial court did not abuse its discretion in admitting the blood test results. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Lana Myers//
LANA MYERS
JUSTICE

210984f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GREGORY SCOTT HUBE,
Appellant

No. 05-21-00984-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3, Collin County, Texas
Trial Court Cause No. 003-86842-2019.
Opinion delivered by Justice Myers. Justices Pedersen, III and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 30th day of November, 2022.