

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00009-CR

William Edward **BENDER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 1, Bexar County, Texas
Trial Court No. 656203
Honorable Sid L. Harle, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: May 29, 2024

AFFIRMED

Appellant William Edward Bender appeals his harassment conviction claiming the trial court failed to limit the definition of "intentionally" to the nature of conduct in the jury charge. *See* TEX. PENAL CODE ANN. § 42.07(a)(7), (c)(2). We affirm.

## BACKGROUND

Bender sent hundreds of emails to the pastor of his church. The content of the emails concerned controversial matters, including white supremacy, racism, sexism, anti-feminism,

antisemitism, and other issues speaking against the church's governance. The pastor contacted the police after receiving an email stating, "You want priests getting covered in gasoline, and set on fire? Because this is how you get priests covered in gasoline[] and set on fire." As a result, Bender was arrested and charged with harassment. *See id.* § 42.07(a)(7). A jury found Bender guilty of harassment, and the trial court followed the jury's sentencing recommendation and assessed Bender's sentence at one hundred fifty days, or five months, in jail. This appeal ensued.

In one issue, Bender argues the definition of "intentionally" in the jury charge should have been limited to the nature of conduct, as applicable to the harassment statute, rather than to both the result of conduct and the nature of conduct. *See* TEX. PENAL CODE. ANN. §§ 6.03(a); 42.07(a)(7); *see Ex parte Sanders*, 663 S.W.3d 197, 215 (Tex. Crim. App. 2022) (stating the gravamen of the section 42.07(a)(7) offense constitutes a nature of conduct offense). Bender did not object to the definition during the jury charge conference.

### APPLICABLE LAW AND STANDARD OF REVIEW

"Abstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations.'" *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). Generally, reversible error in giving an abstract instruction occurs only when the instruction is an incorrect or a misleading statement of a law that "the jury must understand in order to implement the commands of the application paragraph[.]" *Id.* (citations omitted).

Our review begins with determining whether error exists in the charge and, if so, whether harm resulted from the error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The

degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id*. Where, as here, the defendant failed to object to the jury charge, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Id*. at 743–44.

"Egregious harm" results when the error affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Reversal is not required unless the error is so egregious that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). We assess harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id*. A finding of egregious harm must be based on actual harm rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one. *Alcoser*, 663 S.W.3d at 165.

## ANALYSIS

According to Bender, the definition of "intentionally"[1] used in the abstract portion of the jury charge caused him egregious harm because it did not correctly limit the requisite culpable mental state for conviction—whether he intended to harass, annoy, alarm, abuse, torment, or embarrass another by sending repeated electronic communications—thereby lessening the State's burden of proof. The State contends that while the trial court erred by failing to limit the definition to the nature of conduct, when considering the entire jury charge, the state of the evidence, and the arguments of counsel, the record does not reveal Bender suffered egregious harm.

---

[1]The jury charge defined "intentionally" as follows: "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."

*A.    Entire Jury Charge*

In examining the charge for possible error, we "must examine the charge as a whole instead of a series of isolated and unrelated statements." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the information's allegations. *See id*. Because the application paragraph specifies the factual circumstances under which the jury should convict or acquit, it is the "heart and soul" of the jury charge. *Id*. at 367.

Despite Bender's complaint about the definition provided in the abstract portion of the charge, the application paragraph correctly recites the specific intent required to find Bender guilty of harassment:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the 15th day of November, 2020, in Bexar County, Texas, [Bender], *with intent to* harass, annoy, alarm, abuse, torment, or embarrass another, namely, [complainant], did send repeated electronic communications to [complainant] in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another, to wit: by sending multiple electronic mail messages; then you will find [Bender] "guilty" of the offense of Harassment as charged in the information. [Emphasis added.]

Notwithstanding the definition provided in the abstract portion of the charge, the "application section of the charge clearly directed the jury to the appropriate" elements of the offense. *Campbell v. State*, 664 S.W.3d 240, 248 (Tex. Crim. App. 2022). Because the application section of the charge helped to mitigate any error within the abstract portion, Bender suffered no actual harm. *See id.*; *see also Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states[.]").

 *B.*  *State of the Evidence*

The trial court admitted numerous politically, racially, and religiously charged emails that Bender sent to his pastor. He continued to send these types of emails even after his pastor told Bender that he had crossed the line and to stop sending the emails.

Moreover, during Bender's interview with a detective immediately following his arrest, Bender stated he meant what he wrote when sending the emails, and that while not intending to make a terroristic threat, he did not regret what he sent to his pastor. When asked about the email about pouring gasoline on priests and setting them on fire, Bender stated he hoped his pastor and the church hierarchy had the reaction they did because they needed to feel uncomfortable. Bender responded with "[g]ood]" when the detective stated his emails caused alarm. After the interview concluded and while Bender was alone, he talked to the camera and said they "better keep me locked up," referring to what he is "going to do next."

Bender also testified in his own defense. He claimed at trial that he only sent the emails in hopes of engaging in a "political discourse" with his pastor. However, Bender contradicted himself when stating he sent the emails, particularly those referring to Jewish people and women, to "provok[e] a conflict." Bender then agreed he sent the emails to incite, by "getting a rise out of," his pastor and the church by "fueling the flames." Bender likened his provocative emails to being mad at a spouse and the spouse not wanting to engage in an argument, so you "keep after them." Bender also explained he continued to send the emails even after being told to stop because his pastor failed to apprise him of the potential consequences if he continued to send his pastor emails.

The detective who interviewed Bender following his arrest also testified. Particularly, the detective's testimony contradicted Bender's defense that he only sent general information to his

pastor. Rather, the detective claimed Bender carefully selected the information he sent to his pastor pointing to the email that mentioned pouring gasoline on priests and setting them on fire.

### C.    Arguments of Counsel

Throughout the entire trial, including voir dire, opening statements, and closing arguments, both the State's and Bender's counsel focused on Bender's intent in sending the emails and whether he sent them intending to harass, annoy, alarm, abuse, torment, or embarrass Bender's pastor or for other purposes. In particular, the State during its closing argument discussed Bender's interview and testimony wherein Bender agreed he sent the emails intending to alarm his pastor about the church's alleged alignment with terroristic organizations. Bender's counsel, on the other hand, emphasized that Bender merely sent the emails to facilitate discussions with his pastor, not to harass or alarm him. The arguments of counsel clearly concentrated on Bender's intent in sending the emails, meaning the nature of his conduct, not the nature of the results of sending them.

Therefore, when considering the entire jury charge, the state of the evidence, and the arguments of counsel, we conclude the erroneous definition of "intentionally" in the jury charge did not cause Bender egregious harm. *See Almanza*, 686 S.W.2d at 171. We overrule Bender's sole issue.

### CONCLUSION

Having overruled Bender's sole issue on appeal, we affirm the trial court's judgment.

Irene Rios, Justice

Do Not Publish